# Richmond.

## Frank M. LeCato v. Eastern Shore of Virginia Agricultural Association.

### May 27, 1926.

1. Agricultural Fairs—*Negligence—Patron an Invitee.*—There can be no question that the patron of an agricultural fair is an invitee.

2. Negligence—*Invitee—Duty of Owner or Occupant—Notice to Invitee of Unsafe Condition of Premises.*—The owner or occupant who holds out an invitation to others to come upon his premises, must exercise due care in keeping and maintaining his premises in a reasonably safe condition for use for those, using the same with due care, according to the invitation, and where the unsafe condition of his premises was known to him, and not to those using the premises with due care, the owner and occupier should give timely notice to the public or to those who were likely to act upon such invitation of such unsafe condition.

3. Agricultural Fairs—*Unsafe Condition of Premises—Whether Dangerous Condition Obvious or Latent a Question for Jury.*—Where the patron of an agricultural fair was injured from a fall when he stepped on an unsafe seating arrangement without notice of its unsafe condition, it is for the jury to determine whether the unsafe and dangerous condition of the seat was open and obvious, or latent and not observable by a person using it with due care.

4. Negligence—*Instructions—Contributory Negligence—Instruction Ignoring Question of Plaintiff's Contributory Negligence—Case at Bar.*—In the instant case plaintiff, a patron of an agricultural fair, was injured from a fall caused by his stepping upon a defective seating arrangement. The court refused to instruct the jury that if they believed plaintiff stepped upon the broken part of the seating arrangement which gave away under him and caused him to fall, without any knowledge of its broken or injured condition, they should find for the plaintiff.

   *Held:* That the instruction was properly refused as it excluded from the consideration of the jury plaintiff's contributory negligence and based the right of recovery upon plaintiff's lack of knowledge of the defective condition of the seating arrangement without reference to his duty to exercise his faculties to discover the danger if at the time the seating arrangement was obviously unsafe.

5. Negligence—*Instructions—Contributory Negligence—Instruction Ignoring Question of Plaintiff's Contributory Negligence.*—It is settled by numerous decisions in Virginia that where an instruction recites the negligence of the defendant, who offers testimony of the plaintiff's contributory negligence, with the instruction to find for the plaintiff, that it is error to omit therefrom the plaintiff's contributory negligence, as the plaintiff's right of recovery is barred if he was negligent.

6. Negligence—*Allegation and Burden of Proof.*—In an action for negligent injuries, the burden is upon the plaintiff to allege the negligence of defendant and prove the same.

7. Negligence—*Invitee—Duty to Warn Patron at an Agricultural Fair—Case at Bar.*—In the instant case plaintiff, a patron at an agricultural fair, was injured by a fall caused by stepping on to a broken and defective seating arrangement. The negligence of the defendant was the omission to exercise due care to maintain the seat in a reasonably safe condition for persons using it. If the seat became unsafe and the defendant could not repair it before its patrons began to use it, and its danger was not open and obvious, invitees should have been warned of its unsafe condition, or been excluded therefrom.

8. Instructions—*Instruction Based Upon Evidence Furnished by Plaintiff.*—Instructions should be based upon evidence and where the evidence upon which they are based is furnished by the plaintiff himself, it is conclusive on him.

9. Agricultural Fairs—*Negligence—Defective Seating Arrangement— Instructions—Latent or Obvious Danger—Case at Bar.*—In an action by a patron of an agricultural fair to recover for injuries caused by his stepping on a defective seating arrangement and falling, an instruction told the jury that they should find for the plaintiff, if the seating arrangement was defective and that fact was known to the defendant who gave no notice or warning of the condition of the same, and neither repaired it nor excluded the public, "and that the defendant had a reasonable time to make such repairs prior to the accident," and that plaintiff took his seat upon a portion of the seating arrangement without knowledge of its defective condition, and at the time the seating arrangement was not obviously unsafe and unfit to use, and in the exercise of due care plaintiff stepped upon the broken portion of the seating arrangement causing him to fall.

*Held:* That the words in the instruction "and that the defendant had a reasonable time to make such repairs, prior to the accident" might have misled the jury, and caused them to conclude that the defendant owed no duty to give any warning or notice of the defective condition of the seat if it was not open and obvious until it had reasonable time in which to repair the same, and that another instruction given defining reasonable time emphasized this erroneous statement of law.

Error to a judgment of the Circuit Court of Accomac county, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

The opinion states the case.

*George L. Doughty* and *B. D. Ayres*, for the plaintiff in error.

*Benjamin T. Gunter* and *J. Brooks Mapp*, for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

The defendant, Agricultural Association, for many years conducted annually an agricultural fair on its grounds near the village of Keller, in the county of Accomac. As part of its equipment it maintained upon its grounds a certain octagon shaped speaker's stand or seating arrangement with two rows of seats, one above the other around a pine tree. The ends of the boards forming these lower steps or seats were nailed to strips, one inch thick and three inches wide, extending up to and against the pine tree as its support at that end. These strips or supports were about eighteen inches from the ground and were supported in front by a piece of plank extending to the ground and resting thereon. In the middle of these seats there was another perpendicular piece of timber set up on the ground to which the seat was fastened and from which ran a shingling lath to the tree, thus forming a further support.

On the morning, about eight-thirty or nine o'clock,

of the 31st day of August, 1923, it being the last day of the defendant's fair for that year, a motor truck, driven by one of the exhibitors, ran into said seating arrangement and tore loose one of the sections of the lower seat next to the grandstand.  Mears, secretary, Isdell, night watchman, Stevens, general helper of the association and others were present when the section was broken by the automobile truck.  The plaintiff's witnesses testified the seat was only broken at one end and this was pushed back in place by Mears and others; that Mears remarked at the time "we will have this fixed up" and inquired where Bell, the carpenter, was.  The defendant's employees, who were present, and others testified that the seat was broken loose from the supports at both ends—setting up at the end next to the grandstand from four to six inches and was slanting from the supports toward the ground.  After suit was brought several of the eye witnesses to the damage went with a photographer to the place, prized the seat from the supports, and placed it in the position it was at the time of the accident, and pictures taken of the same were produced in evidence before the jury.  The lower steps of the arrangement were necessarily used by persons in getting up, upon and down from the upper seats.

That morning after the seat had been broken LeCato came upon the grounds as a patron of the fair.  He approached these seats from behind, stepped upon one of the lower seats, then took a seat upon the upper seat next to the broken one, and on the end nearest to that one that had been recently damaged.  There were several persons sitting near him and he was looking toward the race track, and away from the broken seat.  After sitting there a while LeCato determined to leave.  He turned toward the broken seat, stepped upon it, and it turned over, he falling with it to the ground.  Just be-

fore or while in the act of stepping upon the broken seat, some one near him shouted "look out," but apparently too late to prevent the unfortunate step.   In the fall the shingling lath fastened to the seat and middle support, or some other portion of the broken seat, struck him between the legs, just behind the scrotum, inflicting upon him a very serious and painful wound, which probably has injured him for life.   There is a very sharp conflict in the testimony as to the time of the injury to LeCato.   He and his witnesses testify that it occurred around twelve o'clock noon, while the defendant's witnesses testify with equal positiveness that it occurred between nine and ten o'clock that morning, shortly after the seat had been damaged.

LeCato brought his action by notice of motion against the defendant to recover twenty thousand dollars for injuries sustained by him by reason of the failure of the defendant to keep and maintain this seating arrangement in a reasonably safe condition for the patrons of the fair, invited to use the same. After alleging the duty of the defendant to its patrons and its knowledge through its employees of the unsafe and dangerous condition of the seating arrangement, the plaintiff's notice of motion sets forth the defendant's negligence as follows:

"That your said officers and employees carelessly and negligently put or placed that part of said seating arrangement torn loose as aforesaid back in its former position without nailing, fastening, securing or repairing the same, which made it apparently safe, though actually and really unsafe, unfit and dangerous to be occupied or used by any one in any manner whatsoever. That nothing further was done to repair said seating arrangement and you, your officers and employees, carelessly and negligently permitted and suffered the

same to remain in the unsafe, unfit and dangerous condition hereinbefore set forth and described, *for a long space of time* and until the injuries hereinbefore set forth had been sustained by the plaintiff, all of which was wholly unknown to the plaintiff but fully known to you, your officers and employees."

The grounds of defense of the defendant were (a) that no negligence on its part was responsible for the injury complained of, and (b) that the failure on the part of the plaintiff to use ordinary care and precaution, in getting down from said seat or stand, that had, but a very short time before, been torn loose from its place by a truck, and its condition was so open and apparent that no prudent man using ordinary care and precaution for his own protection would have stepped thereon, was the cause of his injury. Upon the above issues there was a trial by jury that resulted in a verdict and judgment for the defendant, and the plaintiff has brought the case here for review.

[1] There is no question that LeCato was an invitee and the duty imposed by justice and necessity upon fairs and others who, by invitation express or implied, induce or lead others to come upon their premises, for any lawful purpose, has been settled by the decisions of the courts, and may be stated as follows:

[2] "The owner or occupant who holds out an invitation to others to come upon his premises must exercise due care in keeping and maintaining his premises in a reasonably safe condition for use for those, using the same with due care, according to the invitation, and where the unsafe condition of his premises was known to him, and not to those using the premises with due care, the owner and occupier should give timely notice to the public or to those who were likely to act upon such invitation of such unsafe con-

dition." *Richmond & M. R. Co.* v. *Moore*, 94 Va. 506, 27 S. E. 70, 37 L. R. A. 258; *Carleton* v. *Iron & Steel Co.*, 99 Mass. 216; *Bennett* v. *Louisville, etc., R. R. Co.*, 102 U. S. page 577, 26 L. Ed. 235.

[3] LeCato proved upon the trial that the truck ran into and tore loose one end of one of the sections of the lower seat of the seating arrangement next to the grandstand. Mears, secretary, two employees of the defendant, and one or two others were present and witnessed the accident, and either Mears or the general helper pushed the board back in place. Mears remarked "we will have this fixed up," and inquired where Jim Bell, the carpenter was. This occurred between eight-thirty and nine o'clock in the morning. But nothing was done right away, and this condition was allowed to remain until about noon, when he came upon the grounds and got on the seating arrangement from the opposite side from the broken seat and, without any knowledge or notice of its unsafe and dangerous condition, stepped upon it in getting down from the upper seat and was injured. The defendant proved that the accident occurred between half past nine and ten o'clock that morning, and that the seat or step was broken loose at both ends; at the end next where the plaintiff was sitting, just prior to his injury, was prized up from four to six inches, and the entire seat was slanting very perceptibly away from the supports. This was demonstrated by the photograph of its condition, taken as evidence for the trial. So the only question for the determination of the jury was whether the unsafe and dangerous condition of the seat was open and obvious, or latent and not observable by a person using it with due care.

Upon the conclusion of the evidence the plaintiff asked the following instruction, to-wit:

"The court instructs the jury that if they believe from the evidence that, on the morning the plaintiff sustained the injury complained of, a motor truck ran into the seating arrangement and tore a part thereof loose, and that such fact was known to the defendant, who neither repaired it nor excluded the public from the customary use of the same, and that the plaintiff thereafter entered the grounds of the defendant as a patron and took his seat upon a portion of said seating arrangement without any knowledge of the broken or injured condition of the other part thereof, and that the plaintiff, in the exercise of due care upon his part and still without any knowledge of its broken and injured condition, while getting down from said seating arrangement stepped upon the broken portion thereof, which gave way under him, and caused him to so fall and sustain the injury complained of, then they should find for the plaintiff."

[4] The refusal to give this instruction as asked constitutes the plaintiff's first assignment of error. This instruction excluded from the consideration of the jury entirely the plaintiff's contributory negligence and based his right of recovery upon *his lack of knowledge* of the broken or injured condition of the seat, without any reference to his duty to exercise his faculties to discover the danger in using it, if at the time the seating arrangement was obviously unsafe, and if he could thereby have seen its unsafe condition.

[5] It is settled by numerous decisions in Virginia that where an instruction recites the negligence of the defendant, who offers testimony of the plaintiff's contributory negligence, with the instruction to find for the plaintiff, that it is error to omit therefrom the plaintiff's contributory negligence, as the plaintiff's right of recovery is barred if he was negligent. The court, therefore, was right in refusing this instruction.

But the court amended this instruction and gave it, which is the plaintiff's second assignment of error. In order to discuss this assignment, it is necessary to set forth this amended instruction, to-wit:

"The court instructs the jury that if they believe from the evidence that on the morning the plaintiff sustained the injury complained of a motor truck ran into the seating arrangement and tore a part thereof loose, and that such fact was known to the defendant who gave no warning or notice of the condition of same, and who neither repaired it nor excluded the public from the customary use of the same, and that the defendant had a reasonable time to make such repairs, prior to the accident, and that the plaintiff thereafter entered the grounds of the defendant as a patron and took his seat upon a portion of the seating arrangement without any knowledge of the broken or injured condition of said seating arrangement, and that at that time said seating arrangement was not obviously unsafe and unfit for use thereof, and that the plaintiff in the exercise of due care upon his part, while getting down from said seating arrangement stepped upon the broken portion thereof, which gave way under him and caused him to so fall and sustain the injury complained of, then they should find for the plaintiff."

[6, 7] The only assignment to the amended instruction in the plaintiff's petition for this writ of error was that it relieved the defendant of any liability from failure to give any warning or notice, although it knew the seat had been torn loose, until a reasonable time had elapsed in which to repair it. The burden of course was upon the plaintiff to allege the negligence of the defendant and prove the same as alleged. This it did by alleging and proving that the seat was broken,

and the plank placed back in place between eight and nine o'clock that morning, and that its officers and employees carelessly and negligently permitted and suffered same "to remain in the unsafe, unfit and dangerous condition hereinbefore set forth and described, *for a long. space of time*, and until the injuries hereinafter set forth had been sustained by the plaintiff." The negligence of the defendant was the omission to exercise due care to maintain the seat in a reasonably safe condition for persons using it. Of course if the seat became unsafe and the defendant could not repair it before its patrons began to use it, and its danger was not open and obvious, invitees should have been warned of its unsafe condition or been excluded therefrom.

This instruction is, of course, based upon the plaintiff's contention and evidence that the unsafe condition of the seat was known to the defendant, and that persons using the same with reasonable care would not have observed its unsafe condition, and that it was suffered to remain in the condition for a long space of time, to-wit, nearly three hours and a half. The test of due care, in the maintenance of the seating arrangement under the facts and circumstances detailed by the plaintiff and his witnesses, is what reasonably prudent men would have done under the circumstances within the knowledge and observation of the agents of the defendant. If the defective condition was not apparent, reason and authority required of the defendant that it should either post warnings of its condition, or exclude the patrons from the use thereof, or repair the same before it was used, and failure to perform any of the above duties, if the proximate cause of the plaintiff's use of the unsafe seat, would be actionable negligence.

The instruction correctly stated the law, and if no notice was given or the invitees excluded from using such unsafe seat, then any person invited to use it was justified in doing so. The failure to repair constitutes the continuance of the unsafe condition of the seat, after knowledge thereof, while the former duty of warning would be a withdrawal of the invitation to its patrons to use the seat. The plaintiff does not contend that the amending sentence, "and that the defendant had a reasonable time to make such repairs prior to the accident," was an incorrect statement of the law, but that it relieved the defendant from giving warning of its unsafe condition or excluding the plaintiff from use thereof until a reasonable time had elapsed in which to repair it. It must be observed that the defendant's duties are set forth in the alternative instead of the conjunctive form and the failure to do any of the acts enumerated was negligence. The sentence that the defendant had a reasonable time to make such repairs is an additional fact of negligence responsive to the plaintiff's evidence that the unsafe seat remained so for about three hours, and qualified "who neither repaired it." If that sentence had been placed, as it grammatically should have been, next to the recital of the defendant's duty to repair, instead of after the recital of the defendant's duties, and before the plaintiff's use of the seat, so that the instruction would read "who gave no warning or notice of the condition of the same, and who neither repaired it, *and that the defendant had a reasonable time to make such repairs, prior to the accident,* nor excluded the public from the customary use of the same," there could be no question that the court did not intend that sentence to excuse the defendant from warning the plaintiff of its unsafe condition.

The unsafe condition of the seat and failure to repair—a continuance of that condition—is separate and distinct ground of negligence from warning and notice of its condition.

[8] Instructions should be based upon evidence, and where the evidence upon which they are based is furnished by the plaintiff himself it is conclusive. The sentence complained of in the instruction does not tell the jury that the defendant was not liable unless it had a reasonable time to repair, nor does the defendant, either by instruction or in its evidence, contend that it did not have ample time to repair, but left to the jury to find that three hours was ample time to repair the seat, and the allegation of the plaintiff's notice of motion, that the seat remained in an unsafe condition for a long space of time, was thereby established.

If the instruction is read in connection with instruction D it will be manifest that the court did not intend to relieve the defendant of any duty. In instruction D, given by the court but excepted to by the plaintiff, although not assigned as error in his petition, the jury was told that the defendant had a reasonable time to take the necessary precaution against such injuries, but what was a reasonable time, under all the circumstances of the case, is for the jury to determine. That instruction admitted that the seat was unsafe, and left to the jury to determine whether the defendant had exercised *due care* to protect persons using it, and due care is certainly a matter of fact to be deduced from the circumstances by the jury.

It must be admitted that there was no evidence or issue made before the jury by the parties that called for the amendment or instruction D. In fact, counsel on both sides asked for too many propositions of law, in the shape of instructions, that were irrelevant and

could only serve to confuse the jury, especially where the issue was as clear-cut as in this case. The defendant admitted in its pleadings, and by all the evidence in the case, that it had not repaired the seat, nor used any precautions to prevent its patrons from using the same, *but as a matter of law* it was excused from its failures, because the unsafe condition was open and obvious, and a person who exercised due care for his own safety would not be injured thereby. That was the sole issue in the case, and the relevant instructions told the jury that if the dangerous condition of the seat was not open and obvious, they should find for the plaintiff, but if it was open and obvious then they should find for the defendant. The plaintiff's counsel does not controvert the rule of law, that if the dangerous condition of the seat was open and obvious, and the plaintiff's injury was the result of his lack of care for his own safety, that he was guilty of contributory negligence which barred his recovery as set forth in instruction E, but claims the instruction should have told the jury that the condition of the seat must be patent and obvious to a reasonable man from the viewpoint of the plaintiff.

The jury could not have been mistaken about the intention of the instruction, that the condition of the seat must have been open and obvious to the plaintiff if he had looked before he stepped. It states in plain language "that the condition of the seat in question was patent or obvious, and that a reasonable man could or should, therefore, have seen that same was unsafe to sit or step on," and must mean patent or obvious generally, and especially to persons similarly situated as the plaintiff. If this were not the plain intent of this instruction, the one marked No. 4 emphasizes that the plaintiff was not negligent in stepping on the seat unless it was obviously unsafe to a reason-

able person *similarly situated* as the plaintiff. The instruction could not have misled the jury alone or read with the other instruction, and there was no error therein.

The exception to the admission of the photographs introduced by the defendant of the condition of the seat at the time of the accident was abandoned in this court. This brings us to the plaintiff's last assignment of error, to-wit, that the verdict was contrary to the evidence. Both parties introduced photographs of the condition of the seat at the time of the accident according to their respective contentions, except the plaintiff claimed that the middle support was not under the seat. Such middle supports were under all of the other seats, and was shown by the defendant's photographs and evidence to have been under this seat and leaning from the tree. This is important, as the plaintiff's evidence does not show the dangerous condition of the seat, except from the fact that it broke down when he stepped upon it.

If only one end of the seat was prized up, and then placed back, as shown by his evidence and photographs, the jury might have concluded that it was impossible for it to have turned over and caused his injury. The jury heard the evidence and had before them ,by photographs the situation just prior to the accident according to the respective theories of the plaintiff and defendant, and as that situation is the gravamen of the case, there was sufficient evidence to sustain a verdict for either party.

It is contended that the plaintiff did not have a fair trial because the court instructed the jury "that the defendant had a reasonable time to make such repairs, prior to the accident." If that sentence had been left out of the instruction it would not have changed the real issue, upon which the case was tried. The defend-

ant's defense was in the nature of a plea of confession and avoidance. It claimed no immunity from lack of time to repair, but admitted it did nothing in regard to the damaged seat, because it was patent and obvious from every angle, therefore a 'warning to every one not to use it in any way. If the case were sent back for a new trial, the only issue to be tried would be whether the plaintiff's contributory negligence bars his recovery. This issue was fairly submitted to the jury and resolved in favor of the defendant, which is conclusive.

This case, I think, comes within the influence of the well-settled rule in this jurisdiction that where the court can see from the entire record that under correct instructions no other verdict could have been rightly found, or that the party complaining could not have been prejudiced by the action of the trial court in giving and refusing instructions, it will not reverse the judgment and set aside the verdict. *Standard Red Cedar Chest Company, Inc.* v. *Monroe*, 125 Va. 442-447, 99 S. E. 589.

[9] The conclusions reached by me are not shared by my brethren of the court. They are of opinion that the amendment to the plaintiff's instruction by adding "*and that the defendant had a reasonable time to make such repairs, prior to the accident,*" might have misled the jury, and caused them to conclude that the defendant owed no duty to give any warning or notice of the defective condition of the seat if it was not open and obvious until it had a reasonable time in which to repair the same, and that instruction D emphasized this erroneous statement of the law, therefore the verdict of the jury and judgment of the court will have to be set aside, and a new trial awarded.

*Reversed and remanded.*