# Richmond.

## W. W. WILLIAMSON v. J. W. WELLMAN.

March 19, 1931.

Present, Campbell, Holt; Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Meade & Meade,* for the plaintiff in error.

*Carter & Talbott* and *Wyndham R. Meredith,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action by J. W. Wellman against W. W. Williamson to recover damages for injuries received when a platform on which Wellman was standing collapsed. The verdict was for the plaintiff below and was approved by the trial court. There are numerous errors assigned. A brief statement of the facts is essential to an intelligent understanding of the legal points involved. For convenience, the parties will be referred to in the position they occupied in the court below.

The defendant owned a two-story house in the city of Danville. The second floor was divided into two separate flats consisting of two rooms each, and rented to separate tenants. The only means of ingress and egress to and from these apartments was by an outside stairway, at the top of which was an uncovered platform from which doors opened into each flat. Neither the stairway nor the platform was divided by railings.

The plaintiff was a collector for an industrial insurance company and used these approaches every week for the purpose of collecting premiums from some of the occupants of these flats. On one of these business calls while he and an inspector of the industrial insurance company were standing on the platform it broke loose from the house and precipitated both parties to the ground below, severely injuring the plaintiff. This action against the owner followed.

The defendant contends that the plaintiff did not prove that the possession and control of the approaches was in the landlord; that the plaintiff was not the invitee of the defendant; that there was no privity of estate or contract between him and the plaintiff and hence he owed the plaintiff no duty except that due a licensee; that even if the plaintiff stood in the shoes of the tenant, the defendant owed him only the duty to maintain the approaches in the same condition they were at the time of letting; that the condition of the premises was obvious, in full view, known to the tenants, and this knowledge was imputed to the tenants' invitee; that there was no defect in the premises known to the defendant.

The occupants of these two flats were several and not joint tenants of the owner. The only approach to the second floor was the stairway and platform. It was thereby clearly designed to be used in common and was, in fact, so used by the separate tenants. Neither of the tenants could have exclusive control or exclusive use and occupancy of these approaches. Therefore neither would have any responsibility for keeping them in repair or in proper condition for the use of the other. It follows that the possession and control of the stairway and platform remained in the landlord. *Roman* v. *King,* 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263; *Davies* v. *Kelley,* 112 Ohio St. 122, 146 N. E. 888.

One of the tenants testified that after the platform fell she remained in her room until the agent of the landlord came and temporarily fixed the same, and later it was permanently repaired by the landlord.

While there is some evidence showing that the plaintiff used the stairway and platform for the purpose of collecting insurance premiums from parties occupying both flats, he finally based his right of recovery on the fact that he was collecting insurance premium from Emma Hairston, who was employed as a cook by one of the tenants.

The contention of the defendant that he owed the plaintiff,

as an invitee of the tenant, only the duty to maintain the approaches in the condition they were in, or appeared to be in, at the time of letting and that the invitee of the tenant has no greater right in the use of the premises than the tenant, seems to be supported by the following Massachusetts cases: *Conroy* v. *Maxwell*, 248 Mass. 92, 142 N. E. 809; *Blaufarb* v. *Drooker*, 251 Mass. 201, 146 N. E. 242, 39 A. L. R. 291; *Webber* v. *Sherman*, 254 Mass. 402, 150 N. E. 89; *Lack* v. *McMahon*, 254 Mass. 484, 150 N. E. 225; *Kirby* v. *Tirrell*, 236 Mass. 170, 128 N. E. 28.

In *Looney* v. *McLean*, 129 Mass. 33, 37 Am. Rep. 295, the wife of the tenant was allowed to recover for injuries sustained in a common passageway, possession and control of which was retained by the landlord, on the ground that it was the landlord's duty to keep the same in repair.

In *Woods* v. *Naumkeag Steam Cotton Co.*, 134 Mass. 357, 45 Am. Rep. 344, recovery was denied on the ground that there was no duty on the landlord to remove ice and snow from a common passageway. A distinction was recognized between a common passageway artificially constructed, such as halls and stairways, and a common easement, or right of way, over the land of another.

In the case of *Gordon* v. *Cummings*, 152 Mass. 513, 25 N. E. 978, 9 L. R. A. 640, 23 Am. St. Rep. 846 a mail carrier was allowed to recover for an injury received in a common passageway.

The law in Massachusetts on the duty the landlord owes to a person using a common passageway over which the landlord has retained control is not altogether in accord with the duty imposed in many of the other States. Without attempting to analyze the distinction, we turn to the application of the law to the facts in this case.

The defendant here was the owner of the flats and kept them for the purpose of profit. In order for him to enjoy this profit it was necessary that there be means of ingress and egress to the premises; he elected to make one approach for

both flats, rather than a separate approach for each. This was an invitation for all who had business or social relations with the tenants of the flats to come and pass over this stairway.

This is quite different from a case where a person has a right of way over the lands of another. In such a case the presumption is that he is bound to repair such a way at his own expense, and the landowner has no right to obstruct the way or to dig pitfalls therein. The distinction between the two cases is that the common approach provided in this case was an inducement to obtain tenants for the defendant who owned it, and the duty in him was to exercise ordinary care to maintain the same in a reasonably safe condition. *Sawyer* v. *McGillicuddy*, 81 Me. 318, 17 Atl. 124, 3 L. R. A. 458, 10 Am. St. Rep. 260.

Tiffany on Landlord and Tenant, Vol. 1, p. 628, expresses the general rule thus:

"It frequently happens that the owner of a building demises separate parts thereof to different tenants, access to which parts is by means of a passage, stairway, or other means of approach, which, while intended for the use of the different tenants, is not, in itself, included in the demise to any one of them, and consequently remains in control of the landlord. In such case the landlord in effect invites the use of such passages or stairway by the tenants, and by other persons whose relations to the tenants involve their use of these approaches in order to obtain access to the rooms or apartments demised, and he is accordingly regarded as liable, both to the tenant and such other persons, for any injury caused by his failure to exercise reasonable care to keep such parts of the building in proper repair, as is any owner of land or of structures thereon as regards persons whom he expressly or impliedly invites to enter thereon."

In the case of *Siggins* v. *McGill, et al.*, 72 N. J. Law 263, 62 Alt. 411, 412, 3 L. R. A. (N. S.) 316, 111 Am. St. Rep. 666, the above principle is applied and it is stated that the landlord "is bound to see that reasonable care is exercised to have the passageways and stairways reasonably fit and safe for the uses which he has invited others to make of them."

This doctrine is recognized in *Nesbit* v. *Webb,* 115 Va. 362, 79 S. E. 330. In *Bennett* v. *Railroad Co.,* 102 U. S. 577, 580, 26 L. Ed. 235, it is said:

The rule is "founded in justice and necessity, and illustrated in many adjudged cases in the American courts— that the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons— they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

In the case of *Berlin* v. *Wall,* 122 Va. 425, 95 S. E. 394, 396, L. R. A. 1918 D, 161, Prentis, J., after citing many of the above authorities comments on the principle thus:

"All then that the rule relied upon required of the defendants was to make and keep the room in a reasonably safe condition for the purpose to which it was devoted."

In Thompson on Negligence, Vol. 1, page 1025, the same principle is stated, and it is further said "in such case the liability of the landlord extends not only to his tenants but also to their guests and to anyone lawfully upon the premises and free from contributory negligence." See 16 R. C. L., page 1072.

The defendant relies upon the case of *Smith* v. *Wolsiefer,* 119 Va. 247, 89 S. E. 115. That case has no application to the facts here. The steps referred to in that case were a part of the leased premises and passed by the lease to the complete control of the lessee. Under such circumstances the landlord is only liable to the tenant or his guests for fraudulent concealment of known defects, or upon an agreement to repair.

Among other Virginia cases dealing with this subject, are *Le Cato* v. *Eastern Shore Agricultural Ass'n,* 147 Va. 885, 133 S. E. 488; *Eastern Shore Agricultural Ass'n* v. *Le Cato,* 151 Va. 614, 144 S. E. 713; *Jacobs* v. *Carter,* 154 Va. 87,

152 S. E. 332; *Hospital of St. Vincent of Paul* v. *Thompson,* 116 Va. 101, 81, S. E. 13, 51 L. R. A. (N. S.) 1025; *Nesbit* v. *Webb,* 115 Va. 362 79. S. E. 330; *Davis Bakery* v. *Dozier,* 139 Va. 628, 124 S. E. 411.

In the case of *Virginia, etc. Co.* v. *Perkey's Admr.,* 143 Va. 168, at page 179, 130 S. E. 403, 406, it is said: "The owner is not an insurer of the safety of an invitee while on the premises; he only owes him the duty to exercise ordinary care to see that the property is in a reasonably safe condition for the use he was invited to make of it."

The law in many of the States is stated in 36 C. J. 213, as follows: "A landlord who rents out parts of a building to various tenants reserving the halls, stairways, and other approaches for the common use of his tenants, is under an implied duty to use reasonable care to keep such places in a reasonably safe condition, and is liable for injuries to persons lawfully using those places for failure to perform that duty." The author cites numerous cases to support the text, including cases from the English courts.

In the declaration in the case at bar, the plaintiff states that he was on the premises by the implied invitation of both the landlord and the tenants. The proof shows that he was lawfully on the premises and using the approaches to the second story for the purpose for which they were intended. It was the duty of the landlord to use ordinary care to maintain the approaches in a reasonably safe condition. *Roman* v. *King,* *supra,* 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263, 1273, and note; *Turner* v. *Mertz,* 55 App. D. C. 177, 3 F. (2d) 348, 39 A. L. R. 1145; *Siggins* v. *McGill,* 72 N. J. Law 263, 62 Atl. 411, 3 L. R. A. (N. S.) 316, 111 Am. St. Rep. 666.; *Reardon* v. *Shimelman,* 102 Conn. 383, 128 Atl. 705, 39 A. L. R. 287, and note, p. 294; *Hinthorn* v. *Benfer.* 90 Kan. 731 136 Pac. 247, L R. A. 1915-B, 98, and note; *Davies* v. *Kelley,* 112 Ohio St. 122, 146 N. E. 888.

The trial court in overruling the demurrer and in

refusing to instruct the jury as requested by the defendant applied the principles here approved. Instruction 4, however, given at the request of the plaintiff, applies the doctrine of *res ipsa loquitur*. This was error. See *Riggsby* v. *Tritton,* 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280. The facts in the case were as easily accessible to the plaintiff as to the defendant. The stairway and platform described in the evidence were on the outside of the building, with no roof, and unenclosed. The floor of the platform was of one-inch boards which rested on top of a 2 x 4 scantling nailed to the side of the house. The platform was under the drip from the roof of the house and consequently became water-soaked whenever it rained, which caused its support to rot so it would not hold the nails which fastened it to the side of the house.

There is very slight conflict as to the cause of the collapse. One of the tenants testified that the platform had begun to leave the house some time before the accident and that she had called the attention of the agent of the defendant to this condition and he promised to fix it. The agent, who testified, denied this, but stated that the collapse of the platform was due to the fact that the timbers were not strong enough to hold the platform up and carry the weight of two men because it had become water-soaked and decayed.

It is a matter of common knowledge that timber exposed to the weather and so placed that water will collect in cracks where it is fastened together will rapidly decay. The defendant knew the plan on which the platform was constructed; his agent in collecting the rents saw this approach every week. Yet the only examination that he stated he made was what he could see as he walked up the steps. It follows that in the exercise of ordinary care the defendant would have obtained knowledge of the condition of the timbers before they became so rotten that they gave way.

One of the authorities relied upon by the defendant is *Goldsmith* v. *Ricles* (Mass.), 172 N. E. 526. While this case holds

that it is the duty of the landlord to exercise due care to keep the portion of the leased premises remaining in his control in the same condition they appeared to be in at the time of letting, it also holds that if the landlord knew, or by the exercise of reasonable care should have known, of the defective condition long enough before the accident to have made the repairs and failed so to do, then he is liable, not only to the tenant but to an invitee of the tenant's family, for injuries received by reason of this defect.

The defendant further claims that the plaintiff was guilty of contributory negligence. The evidence shows that the plaintiff and his companion walked up the steps in an ordinary manner, assuming that the approaches were in good condition. The only evidence tending to show that the defect was obvious was the testimony of one of the tenants who stated that on a careful view, such as she made, the condition might have been seen. The plaintiff had a right to assume that the defendant had performed his duty. The agent of the defendant, who had full authority to make necessary repairs, visited the house on the day of the accident and saw nothing wrong with the approach. There is not sufficient evidence to prove contributory negligence.

The decided weight of the evidence shows that the defendant was guilty of negligence in failing to exercise ordinary care in maintaining the common approach in a reasonably safe condition. He knew, or in the exercise of ordinary care should have known, of the rotten condition of the support to the platform in time to make the necessary repairs. For these reasons the giving of instruction No. 4 was harmless error.

This action was begun in the name of J. W. Wellman. The defendant filed a plea setting out that the plaintiff had accepted an award by the Industrial Commission against his employer, the Home Beneficial Association, who was a self-insurer, and that the award had been paid to him. Thereupon, as suggested by this court in the case of *Smith* v. *Virginia Ry.*

*& Power Co.,* 144 Va. 169, 131 S. E. 440, the writ was indorsed in the name of Home Beneficial Association, and by agreement of counsel the action proceeded without any reference to the fact that compensation had been paid. The cause of action in the *Smith Case* arose in 1922 and at the time it was decided the 1924 amendment to sub-section 12, Code, section 1887, known as the workmen's compensation act (Acts 1924, c. 318), did not apply.

The amendment to this section was construed by this court in an opinion concurred in by the five members of the court sitting, announced at the January term, 1931, in the case of *Horsman* v. *R. F. & P. Ry. Co.,* 155 Va. 934, 157 S. E. 158, in which it was held that where an employee has a right to recover damages for an injury from any person other than the employer, he has the election to institute action against the *tortfeasor,* or to accept an award under the workmen's compensation act, but that if the injured employee accepts the award from the Industrial Commission, then such an acceptance is a complete bar to his proceeding with the alternate remedy.

In that case the plaintiff amended the writ and indorsed thereon the names of his employer and the insurance carrier, without their consent. The action was dismissed by the lower court and the judgment of dismissal affirmed in this court.

In the case at bar the indorsement on the writ stated that the action was for the benefit of the employer and the plaintiff as their respective interests might be shown. This amendment was made with the knowledge and consent of the employer, who was present by its attorney.

Prior to the 1924 amendment, section 12 of the workmen's compensation act (Acts 1918, c. 400, sec. 12, as amended by Acts 1920, c. 176), among other things, provided:

(1) That an injured employee who had accepted the benefits of the act was excluded from all other remedies.

(2) The making by an injured employee of a lawful claim against an employer for compensation under the act operated

as an assignment to the employer of any right to recover damages which the injured employee, or his representative, had against another party.

(3) The amount of the compensation to which the injured employee was entitled was not proper evidence in an action brought to recover damages for the injury.

(4) The amount collected by the employer in excess of the amount paid by him, plus expenses and attorney's fee, was held by the employer for the benefit of the injured employee.

(5) A compromise of a claim could not be made by the employer without the approval of both the Industrial Commission and the injured employee, or his representative.

This act was construed by this court in several cases, notably *Smith* v. *Va. Ry. & Power Co., supra,* wherein it was held that the statute was not enacted for the benefit of a negligent third party, and that the only interest he had was in seeing that after judgment proper apportionment was made between the employer who had paid the compensation and the employee.

Notwithstanding that the above seems to have been the plain intention of the act, and was so regarded by the public, the General Assembly of 1924 so amended the act:

(a) That an employee who was entitled to the benefits of the act and was injured by a third party must elect which remedy he would pursue, specifically providing that an acccept-ance of an award was a bar to the other remedy.

(b) That if such an employee was an infant and was employed knowingly and wilfully in violation of law, then the parents of such infant were permitted to recover damages for loss of services of such infant, either against the employer or any other party liable.

The remaining provisions, numbered 2, 3, 4 and 5, above, retained in the act adopted in 1924, seem to be in conflict with provision (a) above. In view of the construction of the act prior to the amendment and the amendment, this court in deciding the *Horsman Case* applied the well-known principle that

where there is an inconsistent and irreconcilable provision in a statute it should be construed so as to give effect to the latest expression of the legislative intent. The new provision in the 1924 amendment shows an evident intent on the part of the legislature to include within its terms a negligent third party.

In the *Horsman Case* it is settled that the amendment bars an injured employee, or his personal representative, from proceeding against a third party liable for an injury after he has accepted an award.

It would be unjust to allow an employer or an insurance carrier to recover from a third party more than such employer or carrier is liable to pay the injured employee, or to permit such employer or carrier to collect from such third party and deny the injured employee the right to compel payment of any surplus so received.

It follows that the practical construction of the statute is to hold that this action is for the sole benefit of the employer, the Home Beneficial Association, and that recovery will be limited to the amount of compensation which it has paid, or is liable to pay, to its injured employee, plus reasonable expenses and attorney's fee.

The judgment, therefore, will be reversed, and the case remanded to the trial court for further proceedings to ascertain the sum to be paid as herein specified; the plaintiff in error having substantially prevailed in this case, costs are awarded him.

*Reversed.*