UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2159

PETER S. JARMAK,

Plaintiff – Appellant,

v.

REBECCA H. RAMOS, a/k/a Rebecca Clarke, a/k/a Rebecca Johnson,

Defendant – Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, Senior District Judge. (6:10-cv-00048-NKM)

Argued: October 23, 2012          Decided: November 16, 2012

Before GREGORY, SHEDD, and DAVIS, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Gregory concurred. Judge Davis wrote a dissenting opinion.

**ARGUED**: James J. O'Keeffe, IV, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant. John Lester Cooley, Jr., WOOTENHART, PLC, Roanoke, Virginia, for Appellee. **ON BRIEF**: Monica Taylor Monday, H. David Gibson, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

In this negligence action, Peter S. Jarmak contends that he was injured when he fell through a rotted hammock while staying as a guest at Rebecca H. Ramos' rental cabin. The district court entered summary judgment for Ramos, concluding she was not negligent as a matter of law because Jarmak failed to establish she had actual or constructive notice of the hammock's unsafe condition. Jarmak now appeals this ruling, arguing he presented sufficient evidence to withstand summary judgment. Because we agree with Jarmak, we vacate the summary judgment and remand for further proceedings.

I

We recount the material facts appearing in the record in the light most favorable to Jarmak, the nonmoving party. Henry v. Purnell, 652 F.3d 524, 527 (4th Cir.) (en banc), cert. denied, 132 S.Ct. 781 (2011). Ramos' primary residence was the cabin, which sits on a lot overlooking the Blue Ridge Mountains in Virginia. In 2007, Ramos began occasionally renting her cabin to guests to earn additional income. When guests occupied the cabin, Ramos stayed elsewhere. A cotton rope hammock hung between two trees in Ramos' backyard, and she advertised the hammock as an amenity in seeking rental customers.

Jarmak and his wife Lesia rented the cabin for several days in early October 2008. In an email sent to Ramos before their rental period began, Lesia stated that Jarmak planned to use the hammock during their visit. At the time of this rental, Ramos was unaware of any problem with the hammock.

One afternoon during the rental period, as Jarmak sat down in the hammock, some of the hammock ropes snapped, causing him to fall through to the ground. Jarmak had not used the hammock before this incident, and he did not examine it or notice anything wrong with it before sitting in it. Afterwards, however, he noticed that the snapped ropes were frayed. Although he felt sore, he did not seek immediate medical attention.

Upon departing the cabin, Jarmak left a note for Ramos in which he stated, among other things, that the ropes on the hammock were rotted and some had snapped when he sat on it. Ramos responded by email, thanking the Jarmaks for informing her about the hammock and stating that she planned to order a new one. Ramos stated in a later email that she had purchased a new hammock and intended to examine it more often in the future. Before Jarmak indicated his intent to file this lawsuit, Ramos disposed of the broken hammock.[1]

---

[1] Because Ramos disposed of the hammock, Jarmak argued below that the district court should sanction her for spoliation of evidence. See generally Hodge v. Wal-Mart Stores, Inc., 360 F.3d (Continued)

In his deposition, Jarmak was asked whether he would have seen the problem with the hammock had he looked at it before sitting in it. Prefacing his answer with the fact that he is not "a hammock expert," he answered that he did not think he would have seen the problem. J.A. 37-38. Jarmak also testified that, apart from the broken hammock ropes, he did not examine any other hammock ropes after he fell.

In her deposition, Ramos was asked whether she inspected her property before renting it to ensure it is in a safe condition. She responded that she cleaned the property and did yard work, and she "assumed that if there was something wrong, [she] would have noticed it." J.A. 66. She also testified that she had no reason to believe that she did any other type of property inspection before renting the cabin to the Jarmaks.

Regarding the hammock specifically, Ramos testified she "looked at it on a regular basis," J.A. 69, and "saw it very frequently," J.A. 127. However, she could not recall the last time she looked at the hammock before the Jarmaks' rental. When asked about the last time she had "inspected" the hammock before the Jarmaks' rental, she stated: "Well, it depends upon what you

446, 450 (4th Cir. 2004) (discussing the spoliation rule). The court rejected that argument, and Jarmak does not challenge that ruling on appeal.

4

mean by inspect. I would look at the hammock. Basically, you know, I would do yard work in the vicinity, very close vicinity frequently [and] I would notice whether or not there was anything broken." J.A. 125. Although Ramos sometimes used the hammock, she could not recall when she last did so before the Jarmaks' rental, stating: "It could have been a few days. It could have been weeks. I don't know." J.A. 125.[2] She further testified that although she tried to protect the hammock by storing it in a shed during inclement weather, she could not recall the last time before the Jarmaks' rental that she had either put the hammock in the shed or taken it out. Ramos also could not specify how old the hammock was, noting only that she purchased it sometime after February 2004.

II

Under Virginia law, which applies in this diversity case, "[a]ll negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." Steward ex rel. Steward v. Holland

---

[2] Ramos' testimony suggests that she infrequently used the hammock. She explained: "I just know that I would sit in it when I had the time. I just don't have as much time to sit in a hammock as I would like." J.A. 125.

5

Family Properties, LLC, 726 S.E.2d 251, 254 (Va. 2012). "In every case, it is for the court to determine, as a question of law, from all the circumstances, if it is controverted, whether the plaintiff falls within the class of those to whom the defendant owes a duty." Dudley v. Offender Aid & Restor. of Richmond, Inc., 401 S.E.2d 878, 883 (Va. 1991). "If that question is answered affirmatively, it is for the jury, properly instructed, to determine as an issue of fact whether the defendant breached the duty." Id.

Of course, under this framework, this case may proceed to the jury only if Jarmak has met his burden at the summary judgment stage. Summary judgment is appropriate if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); Henry, 652 F.3d at 531. Although summary judgment is "favored as a mechanism" to avoid an unnecessary trial, it "must be used carefully so as not . . . to foreclose trial on genuinely disputed, material facts." Thompson Everett, Inc. v. National Cable Adv., LP, 57 F.3d 1317, 1322-23 (4th Cir. 1995). "The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." Hoyle v.

6

<u>Freightliner, LLC</u>, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

Jarmak contends that (1) Ramos owed him a duty of care to maintain her property in a reasonably safe condition and (2) she breached that duty by failing to discover and protect him from the rotted hammock. Pertinent to this appeal, Ramos moved for summary judgment on the grounds that Jarmak failed to establish a prima facie case of negligence because he failed to establish that she had actual or constructive notice of the hammock's unsafe condition.

Ruling on the motion, the district court defined the nature of the relationship between Ramos and Jarmak as being that of innkeeper and guest. Then, after correctly noting that Jarmak does not contend that Ramos had actual notice, the court held that a reasonable jury could not conclude that she had constructive notice of the hammock's unsafe condition "because there is no evidence that the condition was detectable" at the time of the incident. J.A. 115. The court made two important subsidiary findings to support this holding: (1) Ramos had adequately inspected the hammock before Jarmak fell and (2) there is no evidence to establish that the unsafe condition of the hammock would have been visible to her. We review the order granting summary judgment de novo. <u>Henry</u>, 652 F.3d at 531.

A.

For purposes of this appeal, the parties accept, as we do, the district court's determination that Ramos was an innkeeper and Jarmak was her guest. "Once the technical relation of innkeeper . . . and guest has been established, the parties become subject to the duties, responsibilities and liabilities which attach to the relationship." Alpaugh v. Wolverton, 36 S.E.2d 906, 908 (Va. 1946). This is important because, relative to many other legal relationships, an innkeeper's duty of care to its guest is heightened. See Taboada v. Daly Seven, Inc., 626 S.E.2d 428, 433 (Va. 2006) (noting that "the nature of the landlord-tenant relationship is not congruent with the relationship of innkeeper and guest"); Alpaugh, 36 S.E.2d at 908 (holding that a hotel's duty to its guest differs from its duty to a hotel restaurant patron).

Although an innkeeper is not an "absolute insurer" of the personal safety of its guests, a "special relationship" exists between the innkeeper and guest, and an "elevated duty" of care on the innkeeper's part requires it "so far as human care and foresight can provide . . . to use the utmost care and diligence of very cautious persons;" therefore, the innkeeper "will be held liable for the slightest negligence which human care, skill and foresight could have foreseen and guarded against." Taboada,

626 S.E.2d at 434 (internal punctuation edited).[3] The rationale underlying this principle is that "the guest of an innkeeper entrusts his safety to the innkeeper and has little ability to control his environment. The guest relies upon the innkeeper to make the property safe. . . ." Id. Thus, "[t]he responsibility for the premises is primarily on the innkeeper, and the guest may generally assume that they are safe." Crosswhite v. Shelby Operating Corp., 30 S.E.2d 673, 674 (Va. 1944) (internal quotation marks omitted).

Like other property holders, an innkeeper's duty to use reasonable care in maintaining its property "encompasses the duty to make reasonable inspections to determine if and when repairs are needed." Gumenick v. United States, 193 S.E.2d 788, 795 (Va. 1973). Under Virginia law, the term "inspect" is generally defined as "to view closely and critically" or to make a "careful examination." Meadows v. Commonwealth, 544 S.E.2d 876, 878 (Va. App. 2001) (internal punctuation and citations edited). "Whether or not reasonable care was used in making inspections depends upon the facts and circumstances in each case and upon the evidence adduced." Gumenick, 193 S.E.2d at 795.

---

[3] We have described the innkeeper's duty under Virginia law as "a specially [sic] high duty of care." Ely v. Blevins, 706 F.2d 479, 481 (4th Cir. 1983).

One factor to be considered in determining whether an inspection is reasonable is whether the item to be inspected is susceptible to deterioration. See, e.g., Williamson v. Wellman, 158 S.E. 777, 780 (Va. 1931) (in discussing the duty to inspect, the court noted that it "is a matter of common knowledge that timber, exposed to the weather and so placed that water will collect in cracks where it is fastened together, will rapidly decay"); Erle v. City of Norfolk, 123 S.E. 364, 366 (Va. 1924) (in discussing the duty to inspect, the court noted that "[m]unicipal corporations must take notice of the tendency of timber to decay, or to weaken or break when subjected to constant use"). Moreover, the circumstances of a given case may establish that a visual inspection alone is insufficient to satisfy the duty of reasonable care. See, e.g., Gumenick, 193 S.E.2d at 794 (ample evidence existed for jury to find that landlord failed to adequately inspect rotten wood railing, including testimony that the latent rotten condition could have been detected by sounding, tapping, or probing the wood); Lincoln v. Reksten Mgmt., 354 F.3d 262, 267-68 (4th Cir. 2003) (vacating summary judgment in negligence action based on jury question concerning reasonableness of inspection of wooden ship

deck where evidence tended to establish that sounding decayed wood with a hammer could have identified the unsafe condition).[4]

Because an innkeeper owes a duty of care to its guests to inspect and discover unsafe conditions, it can be held liable to a guest under the theory of constructive notice. See Kirby v. Moehlman, 30 S.E.2d 548, 551 (Va. 1944) (explaining that an innkeeper's "qualified duty of ordinary care may become an absolute duty and does become an absolute duty where a proprietor knew or should have known of a danger that might have been easily removed"). Thus, if an unsafe condition on the property was noticeable and had existed for a sufficient length of time so that it would have been discovered by the exercise of reasonable diligence, then the innkeeper can be held responsible for it. See City of Richmond v. Holt, 563 S.E.2d 690, 694 (Va. 2002) (constructive notice generally). The plaintiff bears the burden of proving constructive notice. Revell v. Deegan, 65 S.E.2d 543, 546 (Va. 1951). Although constructive notice cannot be established by mere speculation, Great Atl. & Pac. Tea Co. v. Berry, 128 S.E.2d 311, 314 (Va. 1962), it is usually, if not always, established by circumstantial evidence, Appalachian Power Co. v. Sanders, 349 S.E.2d 101, 105 (Va. 1986).

---

[4] The cases cited in the text deal with wood and its tendency to decay, but the same principles undoubtedly apply to other items, including rope.

11

Applying these principles, and viewing the facts in the light most favorable to Jarmak, we hold that a genuine issue of material fact exists regarding whether Ramos should be charged with constructive notice of the hammock's unsafe condition. This holding precludes summary judgment for Ramos.

B.

In light of Ramos' elevated duty of care as an innkeeper, we first conclude that a jury question exists as to whether she adequately inspected the hammock before Jarmak fell. It is common knowledge that rope deteriorates over time when exposed to nature, and Ramos' testimony that she typically attempted to place the hammock in a shed during inclement weather demonstrates her awareness of this fact. Ramos was also on notice that the Jarmaks intended to use the hammock during their rental period. Nonetheless, although she testified that she looked at the hammock frequently from various areas in her yard, she could not specify when, before Jarmak fell, she had last done so. Likewise, she could not specify when she had last sat in the hammock before Jarmak fell, and her testimony suggests that she sat in it infrequently.

Based on this evidence, a jury reasonably could conclude that Ramos' casual observation and occasional use of the hammock did not fulfill her innkeeper's duty to perform an adequate

12

inspection of her premises.[5] Stated more directly, a jury could reasonably conclude that by not examining the hammock "closely and critically," Meadows, 544 S.E.2d at 878, she did not utilize "utmost care" to ensure the safety of her guests, Taboada, 626 S.E.2d at 434. In this regard, contrary to the district court's reasoning, we conclude that Ramos' duty to inspect the hammock may have encompassed more than a mere visual examination or casual use. It is for a jury to decide that matter based on the facts presented at trial, and a jury might reasonably conclude that Ramos had an obligation to examine the hammock in a more thorough "hands-on" manner.

C.

This conclusion does not, however, end the analysis because "a negligent failure to inspect does not result in the imposition of liability unless it is established that a

---

[5] In Williamson, the plaintiff, who was an invitee, sued a landlord for damages he suffered as a result of the collapse of an exterior stairway and porch. The collapse was caused by the decay of the wood that fastened the stairway and platform to the dwelling. Recognizing that it is common knowledge that wood, when exposed to weather, will rapidly decay, the Supreme Court of Virginia found the evidence sufficient to establish the landlord's constructive notice of the rotten wood. Notable in the court's analysis is the fact that the landlord's only examination of the stairway and platform "was what [his agent] could see as he walked up the steps" when he made his weekly rent collection. 158 S.E. at 780. The court considered this type of casual inspection to be insufficient to satisfy the landlord's duty of care as a matter of law.

13

reasonable inspection would have disclosed the presence of the defect which caused the harm." United States v. Moran Towing & Transp. Co., 409 F.2d 961, 963 (4th Cir. 1969). Given that an unsafe condition "may have existed for a great length of time and could not have been detected by any kind of inspection," the crucial inquiry for constructive notice purposes "is not the length of time the defect may exist," but rather is "the susceptibility to discovery and the length of time the defect may exist that would be sufficient to charge . . . notice." City of Richmond v. Hood Rubber Prods. Co., 190 S.E. 95, 100 (Va. 1937). Thus, we must determine whether there is sufficient evidence in the record for a reasonable jury to conclude that the unsafe condition of the hammock both existed for a sufficient period of time before Jarmak fell and was detectable upon an adequate inspection. If there is not evidence in the record on both of these points, then Ramos is entitled to summary judgment.

The evidence establishes that the broken hammock ropes were frayed and rotten, but there is no direct evidence in the record to establish that a prior visual inspection would have necessarily revealed the unsafe condition. Indeed, the only testimony on this point is Jarmak's statement that he would not have seen the problem with the ropes if he had looked before sitting on the hammock. Of course, unlike Ramos – who had an

elevated duty of care as an innkeeper – Jarmak had no duty under Virginia law to inspect the hammock before sitting in it, and his deposition testimony indicates that he did not closely examine it after he fell. We simply do not believe that Jarmak's testimony in this regard is determinative at this stage of the proceedings.

Because the broken hammock ropes were frayed and rotten, conditions that ordinarily occur over a considerable period of time, we believe that a reasonable jury could conclude that an <u>adequate</u> visual inspection by Ramos would have revealed the unsafe condition.[6] Moreover, as we have noted, Ramos' duty to

---

[6] In <u>Norfolk & W. Ry. Co. v. Chrisman</u>, 247 S.E.2d 457 (Va. 1978), the plaintiff sued a railway company for damages he sustained when a boxcar door fell on him. The evidence established a defect in the metal door guide which, among other things, appeared "awful rusty." <u>Id.</u> at 459. On appeal, the Supreme Court of Virginia considered the company's claim that it was not negligent as a matter of law. The court noted that the company had "the duty, in the exercise of ordinary care, to inspect the car to determine whether it was reasonably safe for unloading and to repair or give warning of any dangerous condition discoverable by the inspection." <u>Id.</u> Rejecting the company's argument that the defect on the door would not have been discoverable by a reasonable inspection, the court held (1) "evidence of the existence of the defect after the accident tended to show that the defect preexisted the accident," (2) "the 'awful rusty' condition of the metal in the defective area justified the inference that the defect had existed for an appreciable period before the accident," and (3) "because the defect was clearly apparent to railroad employees after the accident, the conclusion was justified that the defect would have been 'fairly obvious' upon a reasonable pre-delivery inspection." Id. at 459-60.

15

inspect the hammock may have required her to do more than visually examine it, and we believe that a reasonable jury could also conclude that a hands-on examination of the hammock would have revealed the unsafe condition.

## III

In short, the evidence in this record, viewed in the light most favorably for Jarmak, does not establish as a matter of law that Ramos met her duty as an innkeeper to inspect the hammock before the Jarmaks rented the cabin. Moreover, a jury could reasonably find based on that evidence that an adequate inspection would have revealed the hammock's rotten ropes. Ramos is therefore not entitled to summary judgment. Accordingly, we vacate the summary judgment and remand for further proceedings.[7]

VACATED AND REMANDED

---

[7] After ruling on summary judgment, the district court also denied Jarmak's Rule 59(e) motion. Because we conclude that the court erroneously entered summary judgment, we need not consider Jarmak's appeal from the Rule 59(e) order.

DAVIS, Circuit Judge, dissenting:

The majority concludes that, "In short, the evidence in this record, viewed in the light most favorably for Jarmak, does not establish as a matter of law that Ramos met her duty as an innkeeper to inspect the hammock before the Jarmaks rented the cabin." Ante at 16. In so holding, the majority has asked and answered the wrong question. The issue in this case is not whether "Ramos met her duty as an innkeeper to inspect the hammock before the Jarmaks rented the cabin." Mr. Jarmak, as the plaintiff, bears the risk of non-persuasion, i.e., the burden of proof, on all of the elements of his damages claim. Thus, as the district court recognized, the real issue is whether Mr. Jarmak has offered evidence on the basis of which a <u>reasonable</u> jury could <u>rationally</u> find by a preponderance of the evidence that the condition of the hammock was such that a reasonable inspection[1] would have disclosed such weakness in the ropes that it would be unlikely to support a man, such as Mr. Jarmak, weighing more than 230 pounds. Although the majority asserts that Ms. Ramos was not an insurer, in light of the paucity of

---

[1] We can be certain that Mr. Jarmak will insist that the district court must instruct the jury that only a "hands on" inspection of the hammock (whatever that means) could discharge Ms. Ramos' duty. The district court should of course resist any such instruction as unsupported by any extant Virginia appellate case.

17

evidence in this record of what a "reasonable inspection" would have revealed concerning the condition of the hammock before the ropes broke, that is precisely what the majority's holding makes her.

Even viewed in the light most favorably to Mr. Jarmak, the evidence of Ms. Ramos' breach of duty, at best, is in equipoise.[2] If this case is decided by a jury, the jury will find for Ms. Ramos if it acts rationally. If instead it finds for Mr. Jarmak, its verdict will amount to little more than a flip of a coin successfully (and luckily) called by Mr. Jarmak.

_____

[2] [T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict--whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (second bracket and emphasis in original; quotation marks and citation omitted).

18

The district court did not err in granting summary judgment.[3] Accordingly, and respectfully, I dissent.

---

[3] The majority's reliance on a host of Virginia cases never cited by Mr. Jarmak to the district court or to this Court admittedly makes for a stronger argument in favor of reversal than that made by Mr. Jarmak. Nevertheless, all of those cases are readily distinguishable, and obviously so. For example, although the majority recites that the metal railing holding in the boxcar door that fell off and caused injury in Norfolk & W. Ry. Co. v. Chrisman, 247 S.E.2d 457 (Va. 1978), "among other things, appeared 'awful rusty,'" ante at 15, n.6, the "other thing[]" referred to included the fact that, "[t]he metal in this and a larger adjacent area, 'at some time or another,' had been 'heated and straightened.'" Id. at 459. Thus, the jury was entitled to infer that the defendant railroad employed an instrumentality that it (or its predecessor) knew was likely in an altered and possibly a weakened condition, calling for regular inspections.