Present:  Lacy, Hassell, Keenan, Koontz, Kinser, and Lemons, JJ., and Stephenson, S.J.

JONATHAN THOMPSON, AN INFANT WHO SUES BY
 HIS MOTHER AND NEXT FRIEND, CYNTHIA THOMPSON

                                        OPINION BY
v.  Record No. 000461          JUSTICE LAWRENCE L. KOONTZ, JR.
                                       January 12, 2001
SKATE AMERICA, INC., ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Theodore J. Markow, Judge

     In this appeal, we consider whether the trial court

properly sustained demurrers to a motion for judgment.  In his

motion for judgment, the plaintiff, a business invitee, alleged

that a minor, also a business invitee, intentionally injured him

while on the premises of the business owner.  The plaintiff

further alleged that his injuries proximately resulted from the

negligence of the business owner and the minor's parent.

                          BACKGROUND

     Our review is governed by the well-settled principle that

when we consider the trial court's sustaining of a demurrer "we

look solely at [the plaintiff's] allegations in his motion for

judgment to determine whether he stated a cause of action."

Perk v. Vector Resources Group, Ltd., 253 Va. 310, 312, 485

S.E.2d 140, 142 (1997).  In accord with this standard of review,

we will recite as true the well-pleaded facts in the motion for

judgment.

On October 18, 1999, Jonathan Thompson, by his mother and next friend, Cynthia Thompson, filed a motion for judgment against Skate America, Inc., Travis Bateman, and Bonnie Mundie, Bateman's mother.[1]  That pleading contains the following allegations of fact.  On March 12, 1999, Thompson and Bateman were both patrons and invitees of Skate America, a commercial skating rink in Hanover County.  "[O]n several prior occasions, Bateman had caused disturbances, arguments and fights" at Skate America and "was a known trouble maker, consistently disobeyed the rules of [Skate America] and generally was a menace to . . . patrons of the skating rink."  On several prior occasions, "Bateman had been ejected from Skate America by its employees," and he "had been banned from reentry to Skate America on multiple occasions and was under such a ban" on March 12, 1999.

At closing time, Thompson and Bateman were waiting on Skate America's premises for their parents to pick them up. "[W]ithout . . . provocation, Bateman struck [Thompson] in the back of [his] head with a roller skate, fracturing [his] skull, causing severe and permanent damage, extensive hospitalization and medical expense and grave emotional damage."

---

[1]The motion for judgment does not state the ages of Thompson or Bateman, referring to them only by the legal designation of "infant."  On brief, the parties refer to Thompson and Bateman as "teenagers."

In separate counts of the motion for judgment, Thompson asserts that Skate America, Bateman, and Mundie are separately and jointly liable for the injuries caused by Bateman. Bateman's alleged liability is premised on the assault and battery being a deliberate, intentional act. Skate America's and Mundie's alleged liability is premised on their negligent failure to conduct themselves in accord with duties of care each owed, as business owner and parent respectively, to Thompson regarding the danger of injury from the unlawful act of Bateman. It is further asserted in the motion for judgment that Thompson's injuries were proximately caused by the actions of the defendants.

Thompson specifically asserts in the motion for judgment that Skate America owed its business invitees a duty to protect them by "exclud[ing] persons it knew or, in the exercise of reasonable care, should have known, demonstrated violent and aggressive behavior, so that business invitees, including [Thompson], would not be in danger of physical harm from" such persons. He further asserts that having banned Bateman from the premises, Skate America "failed and neglected to properly

3

supervise Bateman once he had entered, and failed and neglected to keep the premises safe for those lawfully on the premises."[2]

Thompson also specifically asserts in the motion for judgment that Mundie "knew or in the exercise of reasonable care, should have known of Bateman's aggressive and violent behavior, . . . that Batemen had been [banned] from Skate America and . . . that Bateman was a risk to those . . . around him." Thompson further asserts that, in light of this knowledge, "Mundie had the duty, as Bateman's mother and legal custodian, . . . to properly supervise and control him so that he would not endanger those around him."

Skate America filed a demurrer to the motion for judgment. Citing Wright v. Webb, 234 Va. 527, 530, 362 S.E.2d 919, 920 (1987), Skate America contended that a business owner is generally under no duty to protect an invitee from a third person's criminal act committed while the invitee is upon the owner's premises. Skate America conceded that Wright recognized a "narrow, limited exception to this general rule," Burns v. Johnson, 250 Va. 41, 44, 458 S.E.2d 448, 450 (1995), where the owner "knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate

_____

[2]Thompson does not assert in his motion for judgment that Skate America had a duty to warn him concerning the danger of harm from an assault by Bateman.

4

an imminent probability of harm to an invitee," and that in such cases this exception requires "notice of a specific danger just prior to the assault." Wright, 234 Va. at 533, 362 S.E.2d at 922. Skate America contended, however, that the allegations of its knowledge of Bateman's prior propensity for disruptive, violent behavior were insufficient to establish that it had notice of the specific danger that Bateman would assault Thompson.

Mundie also filed a demurrer to the motion for judgment. Relying upon Bell v. Hudgins, 232 Va. 491, 494, 352 S.E.2d 332, 334 (1987), Mundie contended that, in the absence of a principal-agent relationship, a parent cannot be held separately liable for the malicious, intentional acts of a minor child premised upon the independent negligence of the parent in failing to control or supervise the child.

On December 3, 1999, the trial court held a hearing to consider both demurrers. Skate America and Mundie adhered to the positions stated in their pleadings. Thompson, who had not filed a response to either demurrer, argued that Skate America's decision to ban Bateman from its premises showed that it had sufficient notice that Bateman was a present danger to other patrons. Thompson also argued that a parent could be liable for negligently failing to prevent a child from acting on a known or knowable predilection to commit criminal acts.

The trial court sustained both demurrers. In the order dismissing Skate America and Mundie from the suit, the trial court expressly relied upon the Wright and Bell cases as the basis for its judgment. We awarded Thompson this appeal.

DISCUSSION

Initially, the finality of the judgments at issue here requires explanation. Bateman has not yet filed a response to the motion for judgment or otherwise entered an appearance in the trial court, or in this Court although he was made a party to this appeal. Thus, the case against Bateman remains active in the trial court, and the judgment order that is the subject of this appeal is interlocutory in nature.

An interlocutory order which is final as to some but not all parties may in some circumstances be appealed before the case is concluded as to all defendants under the severable interests rule set forth in Wells v. Whitaker, 207 Va. 616, 628-29, 151 S.E.2d 422, 432-33 (1966). See also Leggett v. Caudill, 247 Va. 130, 134, 439 S.E.2d 350, 352 (1994). Under this rule, a final adjudication of a collateral matter that addresses separate and severable interests can be appealed only when the appeal cannot affect the determination of the remaining issues in the case, even if the adjudication is reversed. Id. In such instances, the order may be appealed either at the time of its entry or when the trial court enters a final order disposing of

6

the remainder of the case.  Code § 8.01-670(A)(3); see also, e.g., Hinchey v. Ogden, 226 Va. 234, 236-37 and n.1, 307 S.E.2d 891, 892 and n.1 (1983).

Bateman's liability, as alleged in the motion for judgment, is for the intentional assault and battery of Thompson.  The cause of action for this intentional act by Bateman is separate and distinct from the causes of action for negligence asserted against Skate America and Mundie.  Accordingly, the order that sustained the demurrers and dismissed Skate America and Mundie from the case was final as to them and severable from the interests of the remaining defendant.

The trial court's orders sustaining the two demurrers, each to a distinct cause of action, are addressed by Thompson in two assignments of error, one addressed to each demurrer. Accordingly, we will consider the legal sufficiency of the motion for judgment to state those two causes of action seriatim.

### Cause of Action Against Skate America

The procedural posture of this case is significant.  A demurrer tests only the legal sufficiency of the claims stated in the pleading challenged.  Dray v. New Market Poultry Products, Inc., 258 Va. 187, 189, 518 S.E.2d 312, 312 (1999). While a demurrer does not admit the correctness of the pleading's conclusions of law, Ward's Equip., Inc. v. New

7

Holland North America, Inc., 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997), it "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred," Cox Cable Hampton Roads, Inc. v. City of Norfolk, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991).  Thus, the sole question to be decided by the trial court is whether the facts thus pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant.  In this context, a plaintiff challenging on appeal the sustaining of a defendant's demurrer by the trial court need show only that the trial court erred in finding that the pleading failed to state a cause of action, and not that the plaintiff would have prevailed on the merits of that cause.

Guided by these principles, the issue we must decide is whether the factual allegations in Thompson's motion for judgment are sufficient, as a matter of law, to establish that Skate America had a duty of care to protect Thompson from the injuries caused by Bateman such that a jury could find it liable for those injuries.  See Burns v. Johnson, 250 Va. 41, 44, 458 S.E.2d 448, 450 (1995).  Whether such duty exists is "a pure question of law."  Id. at 45, 458 S.E.2d at 451; Acme Markets, Inc. v. Remschel, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943)

8

("[t]he law determines the duty, and the jury, upon the evidence, determines whether the duty has been performed").

Familiar principles control our determination of whether Skate America potentially had a duty of care in this case. "In Virginia, we adhere to the rule that the owner or occupier of land ordinarily is under no duty to protect an invitee from a third person's criminal act committed while the invitee is upon the premises." Gupton v. Quicke, 247 Va. 362, 363, 442 S.E.2d 658, 658 (1994). However, we have recognized that certain "special relationships" may exist between particular plaintiffs and defendants, either as a matter of law or because of the particular factual circumstances in a given case, which may give rise to a duty of care on the part of the defendant to warn and/or protect the plaintiff against the danger of harm from the reasonably foreseeable criminal acts committed by a third person. We also have stressed that "[b]efore any duty can arise with regard to the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person." A.H. v. Rockingham Publishing Co., 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998)(employer has a de jure special relationship with its employees); see also Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830-31 (2000)(medical facility created de facto special relationship with its patient when it determined that she was in

need of constant supervision and surveillance); Burdette v.
Marks, 244 Va. 309, 312-13, 421 S.E.2d 419, 420-21
(1992)(special relationship existed between deputy and passerby
which imposed legal duty upon deputy to render assistance to
passerby and protect him from attack).  We have recognized
examples of such necessary special relationships that arise as a
matter of law to include a common carrier and its passengers, an
employer and its employees, an innkeeper and its guests, and a
business owner and its invitees.  See A.H., 255 Va. at 220, 495
S.E.2d at 485; Klingbeil Management Group Co. v. Vito, 233 Va.
445, 448, 357 S.E.2d 200, 201 (1987).  Undoubtedly, a special
relationship existed here between Skate America, a business
owner, and Thompson, its invitee.  Accordingly, the dispositive
question in this case is whether that special relationship also
gave rise to a duty of care on the part of Skate America to
protect Thompson from the danger of harm from the criminal act
of Bateman.

In Wright, the first instance in which we addressed
directly the special relationship between a business owner and
an invitee, we held that despite the existence of that special
relationship, the business owner does not owe a duty of care to
protect its invitee unless it "knows that criminal assaults
against persons are occurring, or are about to occur, on the
premises which indicate an imminent probability of harm to [its]

10

invitee." Wright, 234 Va. at 533, 362 S.E.2d at 922.  We further held that for the duty to be imposed there must be "notice of a specific danger just prior to the assault."  Id.

As it did in the trial court, Skate America contends on appeal that the principles stated in Wright are controlling in this case.  It argues that the motion for judgment fails to allege facts that state, imply, or raise the fair and just inference that it had notice of the specific danger of the assault on Thompson by Bateman or that it knew that the assault on Thompson was occurring, or about to occur, on its property.  Accordingly, Skate America asserts that, even if it had a special relationship with Thompson, the trial court properly concluded that the facts were insufficient to support the legal conclusion that Skate America owed a duty of care to protect Thompson.  While we agree that the general principles stated in Wright are implicated in this case, we disagree with Skate America's conclusion regarding the legal sufficiency of the factual allegations in Thompson's motion for judgment.

The significant factor which distinguishes this case from Wright, and from other similar cases, with respect to the question whether Skate America owed Thompson, its invitee, a duty of care to protect him from criminal assaults on its premises is that here it is alleged that a specific individual was known to Skate America to be violent and to have committed

11

assaults on other invitees on its property in the recent past. While in Wright, and other cases, we have declined to "impose liability for negligence based solely upon . . . a background" of prior criminal activity on the defendant's premises or in its vicinity by unknown persons, 234 Va. at 533, 362 S.E.2d at 922, here the circumstances are quite different. Indeed, the allegations in Thompson's motion for judgment plainly state that Skate America had specific knowledge of Bateman's propensity to assault its other invitees, had intervened to inhibit that behavior in the past, and had taken steps to avoid a reoccurrence of that behavior in the future. Thus, taking these allegations as true on demurrer, we are of opinion that the allegations as to Bateman's presence on Skate America's premises were sufficient to state a claim that Skate America was on notice specifically that Thompson was in danger of being injured by Bateman in a criminal assault. The "imminent probability" of that harm, as characterized in Wright, is merely a heightened degree of the "foreseeability" of that harm and here we are of opinion that the specific allegations concerning the knowledge Skate America had of Bateman's prior violent conduct satisfied the necessary degree of foreseeability.

Similarly, these allegations raise the fair and just inference that the magnitude of the burden on Skate America to guard against Bateman's act was negligible, in as much as Skate

America need only to have enforced the ban it was alleged to have imposed on Bateman.  The consequences of placing that burden on Skate America are equally negligible, for it is obviously in the best interest of any business owner to exclude from its premises a person it knows has disrupted its business in the past and who is likely to do so in the future.

We emphasize that our consideration is limited to the question whether the allegations in this motion for judgment are sufficient to state a cause of action against this particular business owner.  Whether the evidence produced at trial would confirm those allegations, and whether a jury would assign sufficient weight to that evidence to impose liability on Skate America for a breach of the duty of care owed must be resolved at trial on remand.  We hold, however, that the allegations of the motion for judgment were sufficient to state a cause of action against Skate America and, thus, we further hold that the trial court erred in sustaining Skate America's demurrer to the motion for judgment.

### Cause of Action Against Mundie

Thompson recognizes on brief that we have declined to impose liability on parents for the criminal acts of their minor children under a theory of negligent parental supervision. Bell, 232 Va. at 494, 352 S.E.2d at 334.  Thompson contends, however, that we have recognized potential parental

13

responsibility for tortious acts committed by minor children in other contexts such as the negligent entrustment of an automobile.  See, e.g., Turner v. Lotts, 244 Va. 554, 558, 422 S.E.2d 765, 767 (1992).  Thompson asserts that "it is impossible to distinguish between liability for permitting a youth to operate a vehicle when injury is likely and permitting a child to be at a public place where he has been banned for aggressive conduct."  Accordingly, he invites us to reconsider the rule in Bell, asserting that it "is not just and it should not be the law of the Commonwealth of Virginia."

Thompson's reliance on Turner is misplaced.  While it is true that the defendant in Turner was the parent of the tortfeasor, this fact was not relevant to our consideration of whether the allegations in that case were sufficient, as a matter of law, to support a claim of negligent entrustment.  Rather, our inquiry was limited to whether the defendant "'knew, or had reasonable cause to know, that he was entrusting his car to an unfit driver likely to cause injury to others.'"  Turner, 244 Va. at 557, 422 S.E.2d at 767 (quoting Denby v. Davis, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972)).  Accordingly, the holding in Turner has no bearing on the reconsideration of Bell urged upon us by Thompson.

In Bell, we said:

14

> We are unwilling to establish in Virginia by judicial decree a blanket rule which would impose civil liability upon parents who fail to control their minor child's criminal behavior.  The General Assembly already has legislated in this area, but stopped short of imposing the broad parental liability urged by the plaintiff.
>
>                   . . . .
>
> We believe that a decision whether to adopt a doctrine of parental neglect is more properly left to the legislature because of the many societal and policy considerations which necessarily bear upon such a decision.

Bell, 232 Va. at 494-95, 352 S.E.2d at 334 (citations omitted).

In the fourteen years since we rejected the plaintiff's invitation in Bell to impose by judicial fiat direct liability upon parents for the alleged negligent supervision of their minor children, the General Assembly has left that holding undisturbed.  We remain of opinion that the answers to the "policy questions generated by the rule advocated by the plaintiff should come from the General Assembly and not the courts."  232 Va. at 495, 352 S.E.2d at 334.  Accordingly, we decline Thompson's invitation to revisit the issue, and we hold that the trial court did not err in sustaining Mundie's demurrer to the motion for judgment.

## CONCLUSION

For these reasons, we will reverse the trial court's judgment sustaining Skate America's demurrer to the motion for

judgment, affirm that portion of the judgment sustaining Mundie's demurrer to the motion for judgment, and remand the case to the trial court for further proceedings consistent with the views expressed in this opinion.

Affirmed in part,
reversed in part,
and remanded.
