Present:  All the Justices

RYAN TABOADA
                                          OPINION BY
v.  Record No. 051094      JUSTICE LAWRENCE L. KOONTZ, JR.
                                          March 3, 2006
DALY SEVEN, INC.

                FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                        Clifford R. Weckstein, Judge

        In this appeal, we consider whether the trial court erred

in sustaining demurrers to a motion for judgment and an amended

motion for judgment against an innkeeper for injuries sustained

by a guest as the result of a criminal assault by a third party

while on the innkeeper's property.  In so doing, we consider as

an issue of first impression what duty of care is owed by an

innkeeper to a guest for injuries caused by a third party.

                                BACKGROUND

        The principles of appellate review that guide our

consideration of this appeal are well-settled.  "A demurrer

admits the truth of the facts contained in the pleading to which

it is addressed, as well as any facts that may be reasonably and

fairly implied and inferred from those allegations.  A demurrer

does not, however, admit the correctness of the pleader's

conclusions of law."  Yuzefovsky v. St. John's Wood Apts., 261

Va. 97, 102, 540 S.E.2d 134, 136-37 (2001) (internal citation

omitted).  Accordingly, we will consider the facts stated, and

those reasonably and fairly implied and inferred, in the two

motions for judgment in this case in a light most favorable to the plaintiff, but we will review the sufficiency of the legal conclusions ascribed to those facts de novo.[1]  Id.  Applying this standard, the relevant facts and legal conclusions in the plaintiff's motions for judgment are as follows.

Daly Seven, Inc. owns and operates hotels in Virginia including a Holiday Inn Express located in downtown Roanoke.  At approximately 2 a.m. on March 27, 2003, Ryan Taboada and his family arrived at the Holiday Inn Express seeking lodging for the night.  Taboada had selected the hotel relying, in part, upon the hotel's representation that the hotel was a "safe, secure, and reliable place to lodge."  Taboada registered as a guest at the hotel and was assigned a room.

Taboada then returned to his vehicle in the hotel's parking lot where his wife and two children were waiting and began to unload the family's luggage.  Derrick W. Smith, who was not a guest at the hotel, approached Taboada and demanded money from

---

[1] As will be more fully related hereafter, this case involves appeals from the trial court's orders sustaining two demurrers:  the first to an original motion for judgment filed by a guest against the owner of a hotel in which statutory and common law negligence claims were asserted and a subsequent one to an amended motion for judgment in which only the common law claim was asserted.  In light of this circumstance, our references to the factual allegations are to be understood in the context of the pertinent motion for judgment.  See Fuste v. Riverside Healthcare Ass'n., 265 Va. 127, 129-30, 575 S.E.2d 858, 860 (2003).

him.  Smith then, immediately and without provocation, began to fire a weapon at Taboada.  Taboada was wounded eight times, suffering severe bodily injuries.  Smith took a wristwatch from Taboada's seven-year-old son and stole the family's vehicle; Taboada's infant daughter was still in her car seat in the vehicle at the time.  Police apprehended Smith, recovered the vehicle, and rescued the infant, who was not physically harmed.

On September 24, 2003, Taboada filed his original motion for judgment in the Circuit Court of the City of Roanoke (trial court) against Daly Seven seeking $3,000,000 in compensatory damages for the injuries he sustained as the result of Smith's criminal act.  In addition to a common law negligence claim, Taboada asserted a statutory claim against Daly Seven based on the duties imposed on innkeepers by Code § 35.1-28.  The trial court sustained Daly Seven's demurrer to both claims.  With respect to the statutory claim, the trial court ruled that Code § 35.1-28(E) "unmistakably proclaims that the duties arising [under the statute] have no application in personal injury cases."  Accordingly, while granting Taboada leave to file an amended motion for judgment with respect to the common law claim, the trial court dismissed the statutory claim with prejudice and without leave to amend.

On September 21, 2004, Taboada filed an amended motion for judgment in which he again asserted his common law negligence

3

claim against Daly Seven premised upon the innkeeper's breach of a duty of care owed to Taboada as a guest. Taboada expanded upon his factual allegations from the original motion for judgment and increased his claim for compensatory damages to $5,000,000.

Taboada alleged that Daly Seven had misrepresented that the Holiday Inn Express was located in a "safe" area when, in fact, Daly Seven "knew that the location of the Holiday Inn Express was in a high crime area, that it attracted assaultive crimes, that criminal assaults against employees and guests were occurring, that criminal assaults would continue to occur, and that the business provided a known target for repeat criminal activity including assaultive crimes on employees and guests."

In support of this allegation, Taboada alleged that "[f]rom January 1, 2000 through March 26, 2003, [Daly Seven] regularly called the Roanoke City Police Department on at least 96 occasions to report the presence of trespassers who refused to leave the premises, the presence of suspicious persons on the premises, larcenies, disorderly persons, suspicious circumstances, and suspected drug offenses. Included in such reports by [Daly Seven] were reports of robberies, malicious woundings, shootings, and other such criminally assaultive acts requiring the attention of the Roanoke City Police Department." Taboada alleged that these facts "specifically placed [Daly

4

Seven] on notice that uninvited persons regularly came upon the parking lot and property of [Daly Seven] and created a risk of imminent harm to the person of the employees of [Daly Seven] and to the person of its guests."

Taboada further alleged that Daly Seven "was informed by the Roanoke City Police Department and by others that its guests were at a specific imminent risk for harm to their persons from uninvited persons coming into or upon its property and that to avoid this imminent risk [Daly Seven] needed to retain the services of uniformed security guards." Taboada alleged that Daly Seven had at one time employed uniformed security guards to patrol the hotel and its parking lot during the overnight hours, but that it had discontinued this practice "in favor of saving expenses."

Taboada premised Daly Seven's liability for his injuries on the legal theory that Daly Seven owed its guests a "standard of care under the circumstances in which [Daly Seven] operated the Holiday Inn Express." According to Taboada, that standard of care

> required [Daly Seven] to have uniformed security guards in place at least between the hours of 10:00 p.m. and 4:00 a.m. seven (7) days a week for the purpose of protecting its guests from the known risk of imminent harm from assaults from third persons. In addition, the standard of care required [Daly Seven] to have in place video cameras clearly identifying unusual or criminal activity which might occur in close proximity to the main entrance to its business

5

so that it could provide assistance to guests who intended to register or who had just completed registration during the hours between 10:00 p.m. and 4:00 a.m. The requirement for video cameras was in direct response to the known risk that guests were in imminent danger of assaults in parking and attempting to enter the premises for purposes of checking in or for guests who had checked in and were returning from the lobby to their vehicles in order to travel to their rooms.

Taboada alleged that had Daly Seven continued to employ uniformed security guards, the guards "would have been able to see the assailant prior to the time of the assault [and] would have been able to stop the assailant before the attack and direct him to leave the premises or, in the alternative, would have been able to warn [Taboada] of the approach of the assailant in time for [Taboada] to protect himself and his family." Taboada further contended that use of a security camera would have afforded similar protection.

On October 13, 2004, Daly Seven filed a demurrer to Taboada's amended motion for judgment. Daly Seven asserted that it "did not have a duty to protect [Taboada] from the intentional criminal assault of a non-employee under the allegations" of the amended motion for judgment. Citing Thompson v. Skate America, Inc., 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001), Daly Seven asserted that the amended motion for judgment failed to state a common law negligence claim against it because Taboada failed to allege that Daly Seven "knew that

6

criminal assaults against persons [were] occurring or about to occur on the premises which indicate[d] an imminent probability of harm and that such knowledge constituted notice of a specific danger just prior to the assault."  (Internal quotation marks omitted).

On February 24, 2005, the trial court entered a final order sustaining Daly Seven's demurrer and dismissing the amended motion for judgment with prejudice, adopting by reference the reasons stated in an opinion letter dated February 13, 2005.  In that opinion letter, the trial court, relying on Yuzefovsky, opined that in "a suit against the owner of the property where [a criminal] attack occurred . . . the plaintiff [must] set forth facts from which the trier of fact could find that the innkeeper knew 'that criminal assaults against persons [were] occurring, or [were] about to occur, on the premises which indicate[d] an imminent probability of harm.' "  Yuzefovsky, 261 Va. at 109, 540 S.E.2d at 141.  The trial court ruled that Taboada had failed to "set forth facts from which [the trial court could] at least infer that the innkeeper should have foreseen the type of criminal activity of which Taboada was a victim."  Accordingly, the trial court determined that Taboada

had failed to adequately plead facts in support of his common law claim of negligence.[2]

# DISCUSSION

Although raised as the last of his four assignments of error, we first address Taboada's assertion that the trial court erred in sustaining the demurrer to the statutory claim under Code § 35.1-28 and dismissing that claim with prejudice.  We do so, before addressing the remaining assignments of error directed to Taboada's common law claim, in order to determine whether the enactment of this statute changed or altered the common law with respect to a duty of care owed by an innkeeper to a guest for injuries caused by the intentional acts of third parties.

The duty of care owed by an innkeeper "to take reasonable precautions to protect the persons and property of [his] guests" is defined, and the innkeeper's liability is limited, by Code § 35.1-28.  In summary, the duties prescribed and the limits of monetary loss provided for in that statute relate to the provision of adequate locks on doors and windows, and are

---

[2] In the February 13, 2005 opinion letter, the trial court also adopted by reference its prior ruling sustaining the demurrer to Taboada's statutory claim under Code § 35.1-28 in the original motion for judgment, for which leave to amend had not been granted.  Thus, the final order addressed both claims, and Taboada's objection to that order preserved both issues for appeal.

8

principally directed to the prevention of the loss of personal property of the guest.  See Code § 35.1-28(B)-(D).  However, as relevant to the issues raised in this appeal, Code § 35.1-28(E) makes plain that the duties prescribed, and the limitation of liability afforded, by the statute do not "change or alter the principles of law concerning a hotel's liability to a guest . . . for personal injury."  Thus, with respect to the specific facts of this case, the duty of care owed to Taboada by Daly Seven with respect to protecting him from injury as the result of a criminal assault by a third party is not governed by the provisions of the statute, but remains governed by the common law.  See Couplin v. Payne, 270 Va. 129, 136, 613 S.E.2d 592, 595 (2005); Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988).  Accordingly, we hold that the trial court's judgment sustaining Daly Seven's demurrer to Taboada's statutory claim under Code § 35.1-28 was correct.[3]

---

[3] We recognize that in Crosswhite v. Shelby Operating Corp., 182 Va. 713, 716, 30 S.E.2d 673, 674 (1944), an innkeeper-guest liability case arising from a personal injury alleged to have been caused by a defective condition of the hotel property, we said, referring to former Code § 15-1602, that "[t]he Code itself . . . tells us what is required of innkeepers."  We then used the standard of care prescribed by that Code section in determining that the trial court had improperly sustained a demurrer to the motion for judgment.  Former Code § 15-1602 corresponds in all relevant parts to subsection A of Code § 35.1-28.  However, at the time Crosswhite was decided, the Code contained no provision corresponding to Code § 35.1-28(E), which was added to the Code in 1981 as part of the enactment of

9

We turn now to consider Taboada's three remaining assignments of error. These all address the trial court's sustaining of the demurrers to his common law claim of negligence. However, because Taboada was granted leave by the trial court to file the amended motion for judgment in which he expanded the allegations in support of his common law claim, we will confine our discussion of this issue to the trial court's judgment sustaining the demurrer to Taboada's amended motion for judgment. Cf. Doe v. Zwelling, 270 Va. 594, 596, 620 S.E.2d 750, 751 (2005); Fuste v. Riverside Healthcare Assoc., 265 Va. 127, 129-30, 575 S.E.2d 858, 860 (2003).

The general rule in Virginia is that there is no common law duty for an owner or occupier of land either to warn or to protect an invitee on his property from the criminal act of a third party. Yuzefovsky, 261 Va. at 106, 540 S.E.2d at 139. "[T]here are narrow exceptions to this rule," but the application of those exceptions "is always fact specific and, thus, not amenable to a bright-line rule for resolution." Id. However, before an exception to the general rule can apply so as

Title 35.1. See 1981 Va. Acts ch. 468. Accordingly, to the extent that Crosswhite can be read to stand for the proposition that an innkeeper's duty of care to protect a guest from personal injury arises only from the statute, the subsequent legislative amendment of the successor statute has clarified that it did not abrogate the duty or the liability imposed on innkeepers for personal injuries to guests by the common law.

10

to impose a potential duty upon the owner of land, the facts "must establish that there is a special relationship, either between the [owner of land] and the [invitee] or between the third party criminal actor and the [owner of land]." Id. at 107, 540 S.E.2d at 139. The relationship between innkeeper and guest has long been recognized by the common law as constituting just such a special relationship.[4] See, e.g., Yuzefovsky, 261 Va. at 108, 540 S.E.2d at 140; Skate America, 261 Va. at 129, 540 S.E.2d at 127; Holles v. Sunrise Terrace, Inc., 257 Va. 131, 136, 509 S.E.2d 494, 497-98 (1999); A.H. v. Rockingham

---

[4] The special legal relationship between innkeepers and guests

> "had its origin in the feudal conditions which were the outgrowth of the Middle Ages. In those days there was little safety outside of castles and fortified towns for the wayfaring traveler, who, exposed on his journey to the depredations of bandits and brigands, had little protection when he sought at night temporary refuge at the wayside inns, established and conducted for his entertainment and convenience. Exposed as he was to robbery and violence, he was compelled to repose confidence, when stopping on his pilgrimages over night, in [proprietors] who were not exempt from temptation; and hence there grew up the salutary principles that a host owed to his guest the duty, not only of hospitality, but also of protection."

Kveragas v. Scottish Inns, Inc., 733 F.2d 409, 412 (6th Cir. 1984) (quoting Crapo v. Rockwell, 94 N.Y.S. 1122 (N.Y.Sup. Ct. 1905)). It continues to be recognized as a special one because "[a]lthough castles and fortified towns are no longer a part of our landscape, bandits and brigands remain" as hazards to those who travel. Id.

11

Publishing Co., 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998);

Klingbeil Management Group Co. v. Vito, 233 Va. 445, 448, 357

S.E.2d 200, 201 (1987).

The establishment of the necessary special relationship is the threshold requirement for the application of an exception to the general rule of non-liability in these cases. Even though the necessary special relationship is established so as to create a potential duty on the defendant to protect or warn the plaintiff against criminal conduct of a third party, there is no liability when the defendant neither knows of the danger of an injury to a plaintiff from the criminal conduct of a third party nor has reason to foresee that danger. In short, the special relationship does not make the defendant an insurer of the plaintiff's safety. See Rockingham, 255 Va. at 220-21, 495 S.E.2d at 485.

Although we have previously addressed questions of liability for injuries caused by third parties involving property owners who were innkeepers, the plaintiffs in those cases were regular business invitees on the property and not guests of the innkeepers. See, e.g., Wright v. Webb, 234 Va. 527, 529, 362 S.E.2d 919, 920 (1987) (patron of adjoining business using parking on innkeeper's property by permission); Alpaugh v. Wolverton, 184 Va. 943, 945, 36 S.E.2d 906, 907 (1946) (patron of restaurant located in innkeeper's property).

12

In contrast, this case presents the opportunity to address directly the question of what duty of care an innkeeper owes to a guest as a result of that special relationship for injuries caused by the criminal conduct of a third party while on the innkeeper's property.

In the absence of prior case law in Virginia concerning the special relationship of innkeeper and guest with regard to injuries suffered by criminal acts of a third party, the trial court looked for guidance in our prior cases involving other special relationships between owners of land and either invitees or tenants. The trial court principally chose Yuzefovsky, which involved the recognized special relationship of a landlord and tenant, for that guidance. We are of opinion, however, that the nature of the landlord-tenant relationship is not congruent with the relationship of innkeeper and guest. Moreover, in Yuzefovsky, we made clear that a higher duty of care may be imposed on the landlord in the special relationship of landlord-tenant because of the specific circumstances of a particular case and not because of any unique aspect of the relationship recognized by the common law. Such, generally, would be the case in any owner-invitee relationship in order to invoke an exception to the general rule of non-liability. Yuzefovsky, 261 Va. at 108, 540 S.E.2d at 140 ("we have consistently rejected the contention that the relationship of landlord and tenant,

13

without more, constitutes a special relationship such that a duty of care may arise with regard to the conduct of a third party"); see also Klingbeil Management Group, 233 Va. at 448, 357 S.E.2d at 201; Gulf Reston, Inc. v. Rogers, 215 Va. 155, 158, 207 S.E.2d 841, 844 (1974).

Additionally, we are unpersuaded by the analogy of the landlord-tenant relationship in this case because, unlike a landlord, an innkeeper is in direct and continued control of the property and usually maintains a presence on the property personally or through agents.  Thus, "while a lessee may be expected to do many things for his own protection," an innkeeper's guest is not as well situated to do so.  Crosswhite v. Shelby Operating Corp., 182 Va. 713, 715, 30 S.E.2d 673, 674 (1944).

In Kirby v. Moehlman, 182 Va. 876, 30 S.E.2d 548 (1944), a premises liability case involving an innkeeper and guest, we observed with regard to the common definition of negligence that "negligence is a relative term and the degree of care in fact should be greater or less commensurate with the circumstances." Id. at 884, 30 S.E.2d at 551 (quoting Eastern Shore of Va. Agric. Assoc. v. LeCato, 151 Va. 614, 619, 144 S.E. 713, 714 (1928)).  In a similar vein, we observed in Rockingham that even though the necessary special relationship is established with regard to a defendant's potential duty to protect or warn a

14

plaintiff against criminal conduct, the defendant is not held to be the insurer of the plaintiff's safety but, rather, it must be established that "the danger of a plaintiff's injury from such conduct was known to the defendant or was reasonably foreseeable."  255 Va. at 220, 495 S.E.2d at 485.

Consistent with these basic principles, we have long recognized that some special relationships impose an elevated duty of care on the property owner.  One such special relationship is that of common carrier and passenger.  See, e.g., Hines v. Garrett, 131 Va. 125, 137, 108 S.E. 690, 693-94 (1921); Virginia R. & P. Co. v. McDemmick, 117 Va. 862, 870, 86 S.E. 744, 747 (1915); see also Wright, 234 Va. at 532, 362 S.E.2d at 922 ("a business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier").  Imposing an elevated duty of care upon the carrier is justified essentially because the passenger entrusts his safety to the carrier, who alone knows the condition of his vehicle and the dangers of the neighborhoods and environs through which the routes of travel may lie.  This imbalance of knowledge and control warrants imposition of a duty on a common carrier "to protect its passengers against violence or disorderly conduct on the part of its own agents, or other passengers and strangers, when such violence or misconduct may be reasonably expected and prevented, yet it is not liable to an

15

action for damages when it is not shown that the company had notice of any acts which justified the expectation that a wrong would be committed." Virginia R. & P., 117 Va. at 870, 86 S.E. at 747; see also Norfolk & Western Ry. v. Birchfield, 105 Va. 809, 822, 54 S.E. 879, 884 (1906).

Like a passenger, the guest of an innkeeper entrusts his safety to the innkeeper and has little ability to control his environment. The guest relies upon the innkeeper to make the property safe and the innkeeper's knowledge of the neighborhood in taking the reasonably necessary precautions to do so. In this regard, it is reasonable for the law to impose upon the innkeeper, as on the common carrier, a duty to take reasonable precautions to protect his guests against injury caused by the criminal conduct on the part of other guests or strangers, if the danger of injury by such conduct is known to the innkeeper or reasonably foreseeable. Indeed, Code § 35.1-28(A) supports the conclusion that such a duty rests upon the innkeeper although under subsection (E) of that statute the parameters of that duty are a matter of common law.

We have held that neither the innkeeper nor the common carrier is an absolute insurer of the guest's or the passenger's personal safety. See, e.g., Crosswhite, 182 Va. at 716, 30 S.E.2d at 674 (innkeeper); Norfolk & Western, 105 Va. at 821, 54 S.E. at 883 (common carrier). Nonetheless, we have held that

16

the duty of care imposed on common carriers is an elevated duty that requires them " 'so far as human care and foresight can provide . . . to use the utmost care and diligence of very cautious persons; and they will be held liable for the slightest negligence which human care, skill and foresight could have foreseen and guarded against.' " Norfolk & Western, 105 Va. at 821, 54 S.E. at 883 (quoting Connell v. Chesapeake and Ohio Ry. Co., 93 Va. 44, 55, 24 S.E. 467, 468 (1896)).  Given the nature of the special relationship between an innkeeper and a guest, we hold that it imposes on the innkeeper the same potential elevated duty of "utmost care and diligence" to protect a guest from the danger of injury caused by the criminal conduct of a third person on the innkeeper's property.

Daly Seven contends that in Wright we extended the application of the duty of care previously applied in our common carrier cases "to business invitors in general" and, thus, that liability for negligence in the latter cases is imposed only when a business invitor "knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee." 234 Va. at 533, 362 S.E.2d at 922.  Our decision in Wright involved a business invitee and not a guest of the hotel and for that reason alone is not authority for Daly Seven's broad contention.  Moreover, in Wright we specifically noted that in a

17

prior common carrier case, Hines v. Garrett, 131 Va. 125, 108 S.E. 690 (1921), we had recognized "the high degree of care a common carrier owes its passengers and, therefore, a carrier's duty to protect passengers from criminal acts of third persons which are reasonably foreseeable." Wright, 234 Va. at 532, 362 S.E.2d at 922. We went on to hold that Hines was inapplicable there "because a business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier." Id.

In commenting on three other common carrier cases, we noted that implicit in all of them "is the element of notice of a specific danger just prior to the assault." Id. at 533, 362 S.E.2d at 922. We then stated that, in the context of a business owner and invitee special relationship, we will not impose liability for negligence based solely upon a background of previous criminal activity on the owner's property. Id. We do not retreat from our holding in Wright; it is simply not applicable to the potential duty of care owed to a guest as a result of the special relationship of innkeeper and guest. And, in the context of that special relationship, we equate "notice of a specific danger" with the concept of a reasonably foreseeable danger and not with the degree of knowledge of criminal assaults that indicate "an imminent probability" of harm. See Skate America, 261 Va. at 130, 540 S.E.2d at 128

18

("imminent probability" of harm is a heightened degree of foreseeability).

Having determined that the special relationship of innkeeper and guest recognized by the common law imposes a duty of "utmost care and diligence" to protect the guest against reasonably foreseeable injury from the criminal conduct of a third party, we now review the allegations of the amended motion for judgment to determine whether Taboada adequately pled a cause of action under that standard. See Sanchez v. Medicorp Health Sys., 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005).

Limiting our consideration only to whether the facts alleged in the amended motion for judgment were sufficient to survive Daly Seven's demurrer, we hold that those allegations, if proven, would be sufficient to permit a trier of fact to find that Daly Seven had breached its duty of care. Taboada alleged that, over a three-year period immediately prior to the attack upon Taboada, Daly Seven's employees had regularly contacted police 96 times to report criminal conduct including robberies, malicious woundings, shootings and other criminally assaultive acts. As a result of these repeated incidents, Daly Seven had been advised by police that "its guests were at a specific imminent risk for harm to their persons from uninvited persons coming into or upon its property." These allegations are sufficient to support a reasonable conclusion that Daly Seven

19

knew its property was located in a high crime area, and that Daly Seven was on notice that its guests were in danger of injury caused by similar criminal acts of third parties. These allegations sufficiently support the further conclusion that the injury to Taboada from the criminal act of the third party was reasonably foreseeable.

For these reasons, we hold that the trial court erred in sustaining Daly Seven's demurrer to Taboada's amended motion for judgment.

CONCLUSION

Accordingly, we will affirm the judgment of the trial court sustaining the demurrer to Taboada's claim under Code § 35.1-28, reverse the judgment of the trial court sustaining the demurrer to Taboada's common law claim, and remand the case for a trial on the merits of that claim.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.

20