# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Nicco Conway et al.

v.

Mount Lebanon Missionary
Baptist Church et al.

February 5, 2010

Case No. (Civil) CL08-1241

By Judge Randall D. Smith

This matter is before the Court on Defendant Chesapeake Golf Club's demurrer and Defendant Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy's Plea in Bar. The demurrer was argued on October 29, 2008, and the Court deferred its ruling until after the evidentiary hearing on the plea in bar. The Court heard evidence on the Plea of Charitable Immunity on July 2, 2009. After hearing argument, the parties submitted memoranda and, having reviewed the parties' memoranda, the Court stands ready to render its decision on both motions at this time.

*Facts*

The facts of the case, as alleged by the Plaintiff, are taken as true for purposes of the demurrer. Plaintiff Nicco Conway was ten years old when he attended a day golf camp run by Defendants Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy. On August 11, 2006, the campers went to Defendant Chesapeake Golf Club ("CGC"). Defendants James Perry, Fred Jones, and James Bright were employees or volunteers of Mount Lebanon who escorted the campers to the golf course. During the day trip, one of the other campers, Defendant Cameron Jackson, negligently swung a golf club that hit Plaintiff Conway in the head. The Plaintiff suffered serious injuries.

*Demurrer*

A. *Standard of Review*

In considering a demurrer, the Court "admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317, 626 S.E.2d 428, 429 (2006) (citing *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001)); *Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006). In order to survive a demurrer, a "pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment'." *Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 611, 268 S.E.2d 298, 302 (2006) (quoting *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967)).

A trial court is "not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [Complaint], but only may determine whether the factual allegations of the [Complaint] are sufficient to state a cause of action." *Harris*, 271 Va. at 195–96, 624 S.E.2d at 24 (quoting *Riverview Farm Assocs., Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000)); *accord Almy v. Grisham*, 273 Va. 68, 76, 639 S.E.2d 182, 186 (2007) ("[A] demurrer presents an issue of law, not an issue of fact.").

## B. *Arguments*

CGC argues that the club did not have a legal duty to protect the Plaintiff from an act by a third party and that the alleged defect, namely the swinging of the golf club, was not a dangerous condition that was known or should have been known by the Defendant. This argument is grounded in premises liability.

The Plaintiff argues that the CGC owed a duty to the Plaintiff and was negligent in preventing the injury from occurring on its premises. The Plaintiff bases this argument on an obligation of property owner to warn of dangerous conditions or the existence of a special relationship between the parties.

## C. *Discussion*

A business owner owes a duty of ordinary care to a licensee on his premises. This obligation requires an owner to warn a licensee of unsafe conditions that are known to the owner but not openly or obviously apparent to the licensee. *Tate v. Rice*, 227 Va. 341, 345, 315 S.E.2d 385, 388 (1984). The Supreme Court of Virginia has specifically noted that an:

> owner or proprietor of a place of amusement, or entertainment, is not an insurer of the safety of his invitees. His duty is to exercise reasonable care for their safety and protection — such care as would be exercised by an ordinarily careful and prudent person in the same position and circumstances.

*Whitfield v. Cox*, 189 Va. 219, 223, 52 S.E.2d 72, 73-74 (1949).

CGC has argued that the claim cannot continue because the harm was caused by an independent third party and that the Defendant did not

breach the duty of care. "The general rule in Virginia is that there is no common law duty for an owner or occupier of land either to warn or to protect an invitee on his property from the criminal act of a third party."*Taboada v. Daly Seven, Inc.*, 271 Va. 313, 322, 626 S.E.2d 428, 432 (2006). However, there is a narrow exception that imposes liability when a third party is involved. This occurs when there is a "special relationship." *Id.* at 323, 626 S.E.2d at 432. A special relationship exists either between the Plaintiff and the Defendant, such as an innkeeper-guest or common carrier-passenger, or between the Defendant and the third party whereby the Defendant should have known that there was an imminent probability of harm. *Fox v. Custis*, 236 Va. 69, 74, 372 S.E.2d 373, 375 (1988), *see also Thompson v. Skate Am., Inc.*, 261 Va. 121, 540 S.E.2d 123 (2001). If a special relationship exists, then the Defendant becomes liable.

D. *Analysis*

In this case, the Plaintiff was lawfully on the CGC's property as a business licensee. Specifically, the Plaintiff was on the property with his day camp in order to engage in golf. Consequently, the Defendant owed a duty of ordinary care to the Plaintiff. The Complaint alleges that the Plaintiff was at the CGC's facility and it had a duty that it breached which caused the Plaintiff's injury. However, the Plaintiff has not alleged any basis of a special relationship between the parties.

The facts alleged in the pleadings do not show that any criminal conduct occurred, nor is it alleged that the Defendant had a special relationship with either the Plaintiff or Defendant Jackson. Without either of these prerequisites, the complaint cannot survive because it fails to allege a special relationship. In addition, the Plaintiff has not alleged criminal misconduct by a third party. Taking the facts pleaded as true, there was neither a special relationship nor criminal misconduct and so the claim may not be based on such a theory. To impose liability to CGC under these facts would make CGC an insurer of the Plaintiff.

The Court finds that the facts alleged in the Complaint, and taken as true, are insufficient to state a cause of action as to Defendant Chesapeake Golf Club. Therefore, the demurrer is sustained.

*Plea in Bar of Charitable Immunity*

A. *Standard of Review*

"The defensive plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party carries the burden of proof on that issue of fact. ... When considering the pleadings, 'the facts stated in the plaintiffs' motion for judgment [are] deemed true'." *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882 (1996) (quoting *Glascock v. Laserna*, 247 Va. 108, 109, 439 S.E.2d 380, 380 (1994)).

The facts as alleged are not challenged in regards to the plea in bar, although the Defendant may present further evidence. In considering the motion, the Court accepts as true the facts as alleged in the complaint and any reasonable inferences. *Schmidt v. Household Fin. Corp.*, 276 Va. 108, 113, 661 S.E.2d 834, 836 (2008).

B. *Arguments*

The Defendant Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy ("Mount Lebanon" or "Defendant" collectively) assert that they are charitable organizations and therefore are immune to suits for negligence under the doctrine of charitable immunity. In support of this, the Defendant provided evidence at the hearing on July 2, 2009. They further assert that Defendants Pastor Kim Brown, Fred Jones, James Perry, and James Bright are employees and volunteers of Mount Lebanon who are also afforded this protection.

The Plaintiff asserts that the Defendant is not a charitable organization when considered under the factors set forth by the Supreme Court of Virginia. Specifically, the Plaintiff argues that the failure of the Church to establish a charter requiring that all income be used for eleemosynary purposes and the compensation plan offered to Church leaders prevents the Defendant from receiving charitable status.

C. *Analysis*

The Court begins its analysis by recognizing that the doctrine of charitable immunity is "firmly embedded in the law of this Commonwealth and has become a part of the general policy of the state." *Ola v. YMCA of South Hampton Roads, Inc.*, 270 Va. 550, 555, 621 S.E.2d

70, 72 (2005), quoting *Memorial Hospital, Inc. v. Oakes*, 200 Va. 878, 889, 108 S.E.2d 388, 396 (1989). The public policy is based upon the belief that the resources of charitable institutions are best used in furtherance of the charitable purpose rather than being subject to claims by those benefiting from the charity itself. Under this premise, Virginia law exempts charitable organizations from some, but not all, tort liability. The organization is immune from liability by actions of its employees, servants, or agents to those having a beneficial relationship with the charity, except in claims of negligence in selection or retention. Immunity does not guard against claims of gross negligence and willful and wanton negligence.

The Defendant has to establish that the charity was (1) organized with a recognized charitable purpose and that its operation is consistent with that purpose and (2) if the first factor is met, then that the plaintiff was a beneficiary of the defendant's charitable institution at the time of the alleged injury.

1. *Are Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy Organized with a Recognized Charitable Purpose, and Do They Operate in Practice Consistently with That Purpose?*

a. *Is Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy Organized with a Recognized Charitable Purpose?*

To determine whether or not the Church and Academy are entitled to charitable immunity, the Court must examine the powers and purposes set forth in the charter or other cornerstone document. *See Ola*, 270 Va. at 557-58, 621 S.E.2d at 73. The Plaintiff argues that there is no evidence in the record of such a charter or articles of incorporation for the Church. In support of this, the Plaintiff cites Virginia Code § 13.1-603 which uses the words charter and articles of incorporation somewhat synonymously.

The Church introduced into evidence testimony of how the Church operates and submitted Exhibit D-1 that provides the mission statement and Constitution for the Church. The Plaintiffs argue that the constitution does not contain a not-for-profit clause, which is one of the trademarks of a charitable purpose. The Plaintiff proposes that an appropriate limitation is one such as is contained in literature from the Internal Revenue Service that was submitted to the Court. Internal Revenue Service, Department of

the Treasury, Pub. No. 557, Tax-Exempt Status for Your Organization (2008). The Plaintiff compares the evidence in the record of Mount Lebanon's work in the community and actions such spiritual counseling and isolated good deeds to facts discussed by the Supreme Court of Virginia in *Bailey v. Lancaster Ruritan Recreation Center*, 256 Va. 221, 224-25, 504 S.E.2d 621, 623 (1998). The Court found in that case that the activities performed did not rise to the level that the Defendant was considered a charitable organization for immunity purposes.

The Church counters this with the argument that it was established with a charitable purpose, as is evidenced in the Constitution, and that it functions in line with that purpose. Upon a showing that the organization is organized for a charitable purpose and functions within that purpose, there is a rebuttable presumption that the organization benefits from charitable immunity.

The Court finds that Mount Lebanon Missionary Baptist Church and Christian School are entitled to the presumption of charitable immunity. There is uncontradicted evidence that the Church has been in existence for just over one hundred years and is an unincorporated association whereby the property is held by trustees. It does not have a charter nor articles of incorporation but is not required by law to have either. The mission statement and Constitution of the Church suffice to establish a charitable purpose. The Court finds these documents to be analogous to those discussed in *Ola*.

b. *Is Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy Actually Operating Its Affairs in Accord with Its Charitable Purpose?*

To determine whether or not an organization is acting within the scope of its charitable purpose, the Court considers the nine factors set forth by the Supreme Court of Virginia in *Ola* and applies them to the particular facts at issue. *Ola*, 270 Va. at 557, 621 S.E.2d at 73 (citing *Oakes*, 200 Va. at 883, 108 S.E.2d at 392).

As previously stated, although the Defendant organization does not have a charter or articles of incorporation, its constitution states that it provides services to the community by way of "social, economic, political, and educational welfares of the community as a living testimony to Christ." (Def. Ex. 1.) This purpose thus seeks, as do most churches, to focus on the religious or spiritual component of human life. In doing so, one of the goals is to convert others to its particular beliefs and means of

practicing religion. In this case, all property of the church is held in trust by the trustee ministry. The Constitution establishes various types and levels of ministers, officers, and positions within the church. There are no shareholders, nor are dividends distributed. The Church's goal to earn more money each year is so that it may expand its services and presence in the community. Between 98% and 99% of the Church's income is derived from contributions from members' tithes and other forms of giving. The remaining percentage comes from interest on the funds given by donation. Any excess funds are used to implement plans for expansion and construction or other purposes as determined by the Church's governing body.

The Plaintiff takes issue with the fact that the Internal Revenue Service ("IRS") has not reviewed the Church's tax-exempt status since 2002. The Plaintiff avers that no opinion issued by the IRS addresses whether tax-exempt status is granted more or less weight when circumstances have changed since the tax-exempt status was conferred. The Plaintiff argues that the IRS would question the status today because of the significant increase in compensation that is paid to the pastor, his wife, and other employees. The Plaintiff points out that the pastor's salary for the year of 2000 was $86,000 and his salary in 2008 had increased to $544,400. During that same time period, the Church's annual revenue increased from $633,000 to $4.1 million. Both the compensation and revenue increased approximately six-fold. The Plaintiff takes the position that a correlation between the growth in the revenue with a corresponding increase in the salaries of the pastor and other Church employees more closely resembles a business model and not a true charity. The Plaintiff notes that the salary of Ms. Ferebee, the finance minister of the Church and chair of the budget committee, has experienced an increase in compensation from $24,000 in 2002 to $87,000 at the time of the hearing. The pastor's wife, Valerie Brown, became a paid employee of the Church in 2001 at an annual salary of $45,000, which has increased to its present day level of $200,000.

The argument over compensation seems to be the pivotal consideration in this case. Other than the amount of compensation paid to the pastor and his wife, Mount Lebanon otherwise functions the same as any other charity granted immunity. There is not sufficient evidence in the record as to any of the other factors in *Ola* that would indicate that the Defendant does not operate as a charitable organization. The remaining issue, then, is whether the compensation provided to the pastor and other employees is a means of profit distribution thus preventing immunity or

appropriate compensation for his services as determined by the Church leadership.

The Plaintiff likens this situation to that present in the Supreme Court of Virginia case of *University of Va. Health Services Foundation v. Morris*, 275 Va. 319 (2008). In that case, the physicians were paid a base salary and received incentive payments based upon revenue generated by their respective departments. Although the hospital did provide care to indigents, the Court found that distributing the profits for the departments based upon generation of revenue was akin to a profit-based system. Because there are no shareholders and nothing in the record to contradict the evidence that whatever the Church receives either goes toward growth, programs such as the Academy, or to compensation for the pastor and other employees, the Plaintiff's argument is really that the compensation to the individuals is a conduit for profit by these individuals.

Mount Lebanon counters the Plaintiff's argument by stating that *Ola* does not directly contemplate a situation concerning the reasonableness of compensation or how compensation is determined. Rather, the Church argues that, because employee compensation is determined by the budget committee and voted on by the church membership, it is the result of a number of factors. In addition, the compensation can only be met if the revenue or collections are in an amount that allows it to be paid. The Church denies that the compensation being paid is akin to a bonus. The Church states that the compensation is based upon the growth in membership—which, the Court notes, is related to the growth in revenue. The Church relates the substantial increase in membership to "how effectively Pastor Brown reaches the spiritual and human needs of the community." (Brief of Def., p. 6.) Mount Lebanon argues that the growth in church membership as a basis for increase in salary is significantly different than the profit distribution involved in *Morris*.

The Church also raises the concern of the Court's potential to intrude into First Amendment issues regarding the separation of church and state in a determination of the reasonableness of compensation. The Church argues that, although compensation is a factor in the *Ola* analysis, when the question of charitable immunity concerns a religious institution, the Court may not delve further into the inquiry due to the protections provided by the United State Constitution.

The Supreme Court of Virginia in *Cha v. Korean Presbyterian Church* recognized the principle set forth by the Supreme Court of the United States that secular courts can not involve themselves in matters of

ecclesiastical governance. 262 Va. 604, 611, 553 S.E.2d 511, 514 (2001). That case involved a suit brought by a former pastor against his church alleging wrongful termination. *Id.* The Court, quoting the Supreme Court of the United States, noted that civil courts do not involve themselves in "matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Id.*, 262 Va. at 612, 553 S.E.2d at 612 (citing *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710, 96 S. Ct. 2372 (1976)). A civil court has jurisdiction only if it can apply neutral principles of law to the issue and not involve itself in questions of church law or policy.

The Plaintiff argues that, if the Court in this case were to question whether the pastor's compensation was unreasonable or exceeds that of a charitable organization, then the Court would be impermissibly invading issues relating to church governance in violation of the Constitution.

The Court walks a fine line in its obligation to consider the compensation under the factors in *Ola* while not delving into questioning the Church's employment practice in violation of the First Amendment. As stated in *Cha*, Courts are not permitted to review what amounts to ecclesiastical disputes. 262 Va. at 611, 553 S.E.2d at 514. However, issues that may arise in connection with a Church's business and can be decided without reference to questions of faith and religious doctrine do not violate the Constitutional separation of church and state. The question for the Court is whether or not it can decide the issue presented solely by reference to neutral principles of law. *Bowie v. Murphy*, 271 Va. 126, 135, 624 S.E.2d 74, 79-80 (2006).

The question presented here is not related to a challenge of the selection of Pastor Brown or any issues relating to a policy or decision he made as the pastor of Mount Lebanon. If the Court were to question the choice of Pastor Brown and the Church's wisdom in setting his compensation, then *Cha* would control and prohibit the Court from evaluating the decisions because they are matters of internal church policy or governance. The question is whether or not the amount of compensation paid by Mount Lebanon to Pastor Brown and other officers should be determined by the Court as excessive in connection with determining if Mount Lebanon is entitled to charitable immunity. This Court can determine whether the compensation is either appropriate under the circumstances or inappropriate, as it serves as a vehicle to distribute wealth rather than in furtherance of a charitable purpose, based upon neutral principles of law. To find otherwise would preclude any Court

from ever considering a compensation scheme by a Church in a determination of charitable immunity.

In the case at bar, no evidence suggests that Mount Lebanon does not receive all of its income from donations by members and guests with only a minute amount coming from interest earned on previously donated funds that are held in interest-bearing accounts. The record demonstrates that Mount Lebanon functions as churches typically do, by spreading the word of their teachings through an expansion of their membership in converting others to their particular beliefs. No one person or group of individuals profits from an increase in revenue over the meeting of expenses by the organization. Rather, the income received is used to meet religious purposes approved by the governing body of the Church. Mount Lebanon Missionary Baptist Church existed decades prior to Pastor Brown's selection as pastor. Yet during his tenure, the membership has increased exponentially.

Any issue as to whether Pastor Brown is grossly overcompensated by the Church for what he does as compared to others cannot be considered as the Court did not receive any evidence of other pastors' compensation. In addition, a strict questioning of the fairness of the compensation would violate the First Amendment of the United States Constitution as well as Article I, section 16, of the Constitution of Virginia. This Court can consider method or manner of the payments made to a pastor as a factor in determining charitable immunity, but may not further probe into the specific decisions as to compensation.

The Court therefore finds that Mount Lebanon Missionary Baptist Church and Academy act within the charitable purpose for which they were created.

2. *Whether the Plaintiff Was a Beneficiary of the Charitable Institution at the Time of the Alleged Injury*

The facts have established that the Plaintiff was a day camper attending the summer camp's golf outing. The Academy receives financial support over the amount charged to participants in order to allow it to function. While not all participants may be expected to pay the required fees, no one has been denied participation due to non-payment. The Plaintiff attended the Academy's summer program for free because his legal guardian, Darlene Northam, was an employee of the Academy.

The fact that an organization receives compensation from those who are able to pay for services does not remove its charitable immunity

protection. The Court's decision rests solely on the organization's status as a charitable entity and not on the beneficiary's financial capability. *Ola*, 270 Va. at 563, 621 S.E.2d at 77.

As noted in *Ola*, "[I]n Virginia, a person is a beneficiary of a charity if they have a 'beneficial relationship' with the charitable organization." *Id.* (citing *Roanoke Hosp. Ass'n v. Hayes*, 204 Va. 703, 704, 133 S.E.2d 559, 562 (1953)). This means that the beneficiary receives something of value from the charity that is within its charitable purpose. *Egerton v. R. E. Lee Mem'l Church*, 395 F.2d 381, 384 (4th Cir. 1968). A person who pays full price is still a beneficiary of the charitable work because that entity could not provide services without such contributions.

The Court finds that the Plaintiff to be a beneficiary of the charitable work of Mount Lebanon Missionary Baptist Church and Mount Lebanon Christian Academy. The Court therefore sustains the plea in bar of charitable immunity as to those Defendants.

Having found that Mount Lebanon is entitled to charitable immunity, the Court must then consider the status of the Defendants who are employees or agents of Mount Lebanon. The Supreme Court of Virginia has held that "[t]he doctrine of charitable immunity adopted in Virginia precludes a charity's beneficiaries from recovering damages from the charity for the negligent acts of its servants or agents if due care was exercised in the hiring and retention of those agents and servants." *Moore v. Warren*, 250 Va. 421; 422-23, 463 S.E.2d 459, 460 (1995) (citing *Staley v. Urbana Chamber of Commerce*, 243 Va. 32, 35, 413 S.E.2d 47, 29 (1992)).

In this case, the Complaint states that James Perry, Fred Jones, and James Bright were employees, agents, or servants of Mount Lebanon and were acting within the scope of employment on that day. Pastor Kim is also sued, but his involvement is never mentioned in the complaint. Regardless, the evidence at the hearing on the plea in bar clearly shows that he is an employee. As all four of these Defendants are employees of Mount Lebanon, the cloak of charitable immunity protects them in cases of negligence. The Plaintiff has not made any allegations that Mount Lebanon lacked due care in the hiring or retention of these employees. Therefore, the plea in bar as to these four Defendants is sustained.